DALLAS CENTRAL APPRAISAL DIS-
TRICT and Appraisal Review Board
of Dallas County, Appellants,

v.

PARK STEMMONS, LTD. and
Mockingbird Towers, Ltd.,
Appellees.

No. 05–95–00691–CV.

Court of Appeals of Texas,
Dallas.

May 13, 1997.

John F. Roehm, III, Peter G. Smith, Nichols Jackson Dillard Hager & Smith, L.L.P., Dallas, Rita A. Baranowski, Assistant Attorney General, Taxation Division, Austin, for Appellants.

John Brusniak, Jr., Todd Clement, Brusniak & Clement, P.C., Dallas, for Appellees.

Before MALONEY, CHAPMAN and JAMES, JJ.

## OPINION ON REHEARING

MALONEY, Justice.

We grant appellees' motion for rehearing. We withdraw our opinion of September 20, 1996 and vacate our previous judgment. The following is now the opinion of the Court.

Park Stemmons, Ltd. and Mockingbird Towers, Ltd. (collectively appellees) filed this action in district court to compel the Dallas Central Appraisal District (Appraisal District) and the Appraisal Review Board of Dallas County (Review Board) (collectively appellants) to conduct a hearing on an excessive appraisal for tax purposes. In seven points of error, appellants complain generally the trial court erred in (1) denying appellants' motion for summary judgment, (2) granting appellees' motion for summary judgment, and (3) ordering the Review Board to conduct administrative hearings. In three cross-points of error, appellees complain the trial court erred by not (1) ordering a correction of the 1993 appraisal roll, and (2) holding that section 25.25(d) of the Texas Tax Code,[1] as applied to appellees, was an unconstitutional deprivation of property without due process of law. We reverse the trial court's granting of appellees' motion for summary judgment and render judgment for appellants.

## BACKGROUND

On January 1, 1993, Intereal Company owned real property on Stemmons Freeway (the Stemmons property), and Metropolitan Life Insurance Company owned real property on Mockingbird Lane (the Mockingbird property). Each owner timely filed a notice of protest of its property's 1993 ad valorem tax appraisal under chapter 41 of the code,[2] contending the appraised values exceeded the actual values by more than one-third. The Review Board scheduled hearings on their protests. Before the hearings, Intereal, Metropolitan, and the Appraisal District executed settlement agreements that established reduced 1993 appraisal values for the properties. Intereal and Metropolitan withdrew their notices of protest, and the Review Board canceled the hearings. On July 26, 1993, the Review Board approved appraisal rolls containing the agreed appraisal values for the Stemmons and Mockingbird properties.

Intereal sold the Stemmons property to appellee Park Stemmons, Ltd. on December 16, 1993. Metropolitan sold the Mockingbird property to appellee Mockingbird Towers, Ltd. on December 30, 1993. On January 31, 1994, appellees filed separate motions under section 25.25(d) seeking to correct what they alleged were excessive 1993 appraisal values on their recently purchased properties and each requested a hearing. The Review Board denied the requests for a hearing.

Appellees sued the Appraisal District and the Review Board to compel a hearing. As alternative relief in their prayer, they requested the trial court correct the properties' appraised values or declare the Review Board's denial of a hearing deprived them of property without due process of law. Appellants and appellees each moved for summary judgment. The trial court denied appellants' motion for summary judgment, granted appellees' motion for summary judgment, and ordered the Review Board to conduct a hearing on appellees' motions to correct the appraisal roll.

## SUMMARY JUDGMENT

In appellants' first point of error, they contend the trial court erred in denying their

---

1. *See* TEX. TAX CODE ANN. § 25.25(d) (Vernon 1992). Unless otherwise noted, all subsequent references to the "code" are to the Texas Tax Code.

2. *See* TEX TAX CODE ANN. § 41 (Vernon 1992).

motion for summary judgment. In appellants' second and third points of error, they contend the trial court erred in granting appellees' motion for summary judgment and ordering the Review Board to conduct an administrative hearing on appellees' motions to correct the appraisal roll under section 25.25(d) of the code. In appellants' fourth point of error, they contend the trial court erred in failing to hold that the written value agreements precluded appellees from challenging the 1993 appraisal values.

In appellees' first and second cross-points of error, they argue the trial court erred in not ordering the 1993 appraisal roll corrected to reflect an appraised value of $2,500,000 for the Stemmons property and $4,000,000 for the Mockingbird property.

### 1. Standard of Review

The standard of review in summary judgment is well established. TEX.R. CIV. P. 166a(c); *see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962); *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952); *Ross v. Texas One Partnership*, 796 S.W.2d 206, 209 (Tex.App.—Dallas 1990), *writ denied per curiam*, 806 S.W.2d 222 (Tex.1991). To prevail on summary judgment, a plaintiff must conclusively prove all elements of its cause of action as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). To establish its right to summary judgment, a defendant must either disprove an essential element of the plaintiff's cause of action as a matter of law or establish all elements of a defense as a matter of law. *Damron v. Ornish*, 862 S.W.2d 683, 684 (Tex.App.—Dallas 1993, writ denied); *Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 233 (Tex.App.—Dallas 1993, writ denied).

When both parties move for summary judgment, each party "bears the burden of establishing that it is entitled to judgment as a matter of law." *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993). If the trial court grants one summary judgment and denies the other, we may render the judgment the trial court should have rendered. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

### 2. Statutory Construction

We construe statutes as written and, if possible, determine the legislature's intent from the statute's language. *See Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985). To determine legislative intent, we look to the statute as a whole and not to its isolated provisions. *Id.* We do not give a statute a meaning that conflicts with other provisions if we can reasonably harmonize the provisions. *City of Wilmer v. Laidlaw Waste Sys. (Dallas), Inc.*, 890 S.W.2d 459, 465 (Tex.App.—Dallas 1994), *aff'd*, 904 S.W.2d 656 (Tex.1995); *Estate of Padilla v. Charter Oaks Fire Ins. Co.*, 843 S.W.2d 196, 198 (Tex.App.—Dallas 1992, writ denied). We interpret a provision in the context of the entire law in which it is found. *See City of W. Tawakoni v. Williams*, 742 S.W.2d 489, 491 (Tex.App.—Dallas 1987, writ denied). We construe taxing statutes strictly against the taxing authority and liberally for the taxpayer. *See Wilson Communications, Inc. v. Calvert*, 450 S.W.2d 842, 844 (Tex.1970); *First Nat'l Bank v. Bullock*, 584 S.W.2d 548, 551 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.).

### 3. Applicable Law

Taxing authorities appraise taxable property at market value as of January 1 of each year. TEX. TAX CODE ANN. § 23.01(a) (Vernon 1992). The code requires appraisal districts to notify property owners by May 15 of each year if (1) the appraised value of their property is greater than it was in the preceding year, (2) the appraised value of the property is greater than the value rendered by the property owner, or (3) the property was not on the appraisal roll in the preceding year. TEX. TAX CODE ANN. § 25.19(a) (Ver-

non 1992). The appraisal review board must approve the tax roll annually by July 20. TEX. TAX CODE ANN. § 41.12(a) (Vernon Supp. 1997). Taxes become delinquent if not paid before February 1 of the year following the year in which they are imposed. TEX. TAX CODE ANN. § 31.02(a) (Vernon 1992).

The code also provides property owners with remedies.[3] A property owner is entitled to protest his property's appraised value before the appraisal review board. TEX. TAX CODE ANN. § 41.41(1) (Vernon 1992). A property owner must file his written protest before June 1 of the tax year or within thirty days of receipt of the appraisal. TEX. TAX CODE ANN. § 41.44(a) (Vernon 1992). A property owner who is dissatisfied with the board's decision may petition for review in district court under chapter 42 within forty-five days of notification of the review board's decision. TEX. TAX CODE ANN. § 42.21 (Vernon 1992). Exact compliance with the procedures of chapters 41 and 42, within the prescribed time periods, is mandatory before a property owner can maintain a valuation challenge in district court. TEX. TAX CODE ANN. § 42.09 (Vernon 1992); *Atascosa County Appraisal Dist. v. Tymrak*, 858 S.W.2d 335, 336 (Tex.1993); *Keggereis v. Dallas Cent. Appraisal Dist.*, 749 S.W.2d 516, 519 (Tex.App.—Dallas 1988, no writ).

Any time before taxes become delinquent, either "a property owner or the chief appraiser" may file a motion to change the appraisal roll to correct an error that caused overvaluation of a property by more than one-third of its correct appraised value.[4] TEX. TAX CODE ANN. § 25.25(d) (Vernon 1992). However, neither a property owner nor the chief appraiser can use section 25.25(d) to change the appraisal roll if the property was previously "the subject of a protest brought by the property owner under Chapter 41 or *if the appraised value of the*

*property was established as a result of a written agreement* between the property owner or his agent and the appraisal district." *Id.* (emphasis added).

A property owner who purchases property after January 1 of the tax year at issue can file any motion that section 25.25 authorizes the owner as of January 1 of the tax year to file, if the deadline for filing the motion has not passed. TEX. TAX CODE ANN. § 25.25(i) (Vernon Supp.1997). When the property's ownership changes during the pendency of a motion to correct the appraisal roll under section 25.25, the new owner can proceed with the motion in the same manner as the owner initiating the motion. TEX. TAX CODE ANN. § 25.25(j) (Vernon Supp.1997).

#### 4. Application of Law to Facts

Appellees moved for summary judgment, alleging that (1) section 25.25(d) expressly provided the relief they sought, (2) the previous owners' notices of protest, subsequent agreements with the Appraisal District, and corresponding withdrawal of their protests did not render section 25.25(d) inapplicable to appellees, (3) the summary judgment evidence established the correct appraised value for the properties, and (4) appellants applied section 25.25(d) to deprive appellees of property without due process of law.[5]

Appellants moved for summary judgment, alleging that (1) section 25.25(d) precluded appellees from invoking the district court's jurisdiction to review the Review Board's denial of appellees' request for a hearing under section 25.25(d), (2) appellees lacked standing to contest and appeal the value settlement agreements establishing the properties' 1993 appraised values, (3) section 25.25(d) is constitutional and did not deprive appellees of property without due process of law, and (4) no issues of material fact exist

---

**3.** Subtitle F provides "Remedies" under the code. Chapter 41 is entitled "Local Review"; chapter 42 is entitled "Judicial Review."

**4.** Subtitle D of the code outlines the "Appraisal and Assessment" process. Under chapter 25, "Local Appraisal," section 25.25 provides methods for "Correction of [the] Appraisal Roll."

**5.** Appellees contended that appellants' application of section 25.25(d) prevented appellees from

disputing an excessive valuation of property that otherwise qualifies for correction under section 25.25(d). Specifically, appellees argued that using the previous property owners' protests, subsequent agreements with the Appraisal District, and corresponding withdrawals of each protest before the hearing renders section 25.25(d) unconstitutional as applied to appellees' situation.

that would preclude judgment for appellants as a matter of law.

Here, appellants and appellees submitted a stipulation of the summary judgment evidence. The stipulation clearly stated that the "official Notices of Protest ... were withdrawn *as a result of the Value Settlement Agreements* entered into regarding the properties' 1993 appraised values" and "[t]he appraisal rolls containing the 1993 appraised values of the Properties were approved by the Appraisal Review Board." (Emphasis added.)

Appellants and appellees each rely on this Court's recent opinion in *Sowell Construction Co. v. Dallas Central Appraisal District,* 900 S.W.2d 82 (Tex.App.—Dallas 1995, writ denied), to support their positions. In *Sowell,* a previous property owner protested his property's appraisal under chapter 41, but withdrew the protest before the appraisal board could hold a hearing. The owner then sold the property to Sowell *before* the appraisal board approved the property's appraised tax value for that year. Sowell, the new owner, moved to correct the valuation pursuant to section 25.25(d) of the code. This Court held that an unadjudicated notice of protest filed by a previous owner under chapter 41 does not bar a hearing on a subsequent section 25.25(d) protest filed by the new property owner. *Id.* at 85. After comparing protests filed under chapter 41 with those filed under section 25.25(d), we concluded that:

> [I]t is clear from the nature of the act and the language of the statute that the purpose of section 25.25(d) is to permit a property owner to file a late appraisal protest, but prevent multiple adjudications on a protested appraisal in the same year. For example, if the ownership of a parcel of real estate changed several times in one calendar year, each successive owner might wish to protest the valuation of the property and have that protest determined by the Appraisal Board. Section 25.25(d) prevents the necessity of multiple hearings as to the same parcel of real estate by granting relief only to property owners

whose property was not previously the subject of a protest under Chapter 41. *Id.*

Like the previous owner in *Sowell,* Intereal and Metropolitan filed protests under chapter 41 and withdrew their protests before the appraisal board held a hearing. Unlike the previous owner in *Sowell,* Intereal and Metropolitan each executed a written agreement establishing 1993 appraisal values for their properties.

Appellees contend that section 25.25(d) only precludes their relief if *"the"* property owner has previously pursued a protest or entered into a written agreement, not if *"any"* property owner has done so. They argue that *"the"* property owner means *"the current"* owner, not *"a previous"* owner.

Subsection (d) provides for correction of erroneous appraisal values after the Review Board has finalized the appraisal roll. It makes no provision for changes in ownership during the tax year. Subsections (i) and (j), however, address a new owner's rights. Subsection (i) authorizes a purchaser of property after January 1 of a tax year to file any motion that *the owner of the property on January 1* could have filed. Subsection (j) permits a new owner to proceed with a motion to correct the appraisal roll under subsection (d) when that motion is pending at the time ownership changes.

■ We easily harmonize these statutory provisions. *See Estate of Padilla,* 843 S.W.2d at 198. Because subsections (i) and (j) expressly provide for changes in ownership during the tax year, they do not conflict with subsection (d). Rather, in harmonizing subsections (d), (i), and (j), we conclude that subsection (d) does not make the distinction between *"the current"* owner and *"a previous"* owner that appellees advance.

■ The summary judgment evidence conclusively shows that the written settlement agreement between Intereal and the Appraisal District and between Metropolitan and the Appraisal District decided the 1993 appraisal values on the Stemmons and Mockingbird properties. Neither Intereal nor Metropolitan could have filed a correction motion under subsection (d) because of these

written settlement agreements. Subsection (i) allows the new owners, appellees, to file only that which the January 1 owners, Intereal and Metropolitan, could file. Consequently, appellees were precluded from filing to correct the 1993 appraisal roll under subsection (d). Thus, the express language of section 25.25 prevents any subsequent owners of the Stemmons and Mockingbird properties from benefiting from its remedies for the 1993 tax year.

Because appellees had no standing under section 25.25 to challenge the 1993 approved appraisal values of the Stemmons and Mockingbird properties, we sustain appellants' first, second, third, and fourth points of error.

In appellees' first and second cross-points of error, they contend that the trial court erred in not ordering the Review Board to correct the 1993 appraisal roll to reflect appraised values of $2,500,000 for the Stemmons property and $4,000,000 for the Mockingbird property. Because of our determination of appellants' first, second, third, and fourth points of error, we overrule appellees' first and second cross-points of error.

## CONSTITUTIONALITY

In appellants' fifth and sixth points of error, they argue the trial court erred in granting appellees' cross-motion for summary judgment on the grounds that (1) appellees were deprived of property without due process of law, and (2) section 25.25(d) of the code was unconstitutional. In appellants' seventh point of error, they contend the trial court should have held that (1) the statute was constitutional and (2) appellants' failure to grant appellees an administrative hearing under section 25.25(d) of the code did not deprive appellees of property without due process of law.

In appellees' third cross-point of error, they argue alternatively that the trial court erred in holding that "section 25.25(d) was constitutional and was not a deprivation of property without due process of law."

### 1. Applicable Law

When the code's procedural requirements limit a taxpayer's ability to assert a right and deprive that same taxpayer of a property right, due process requires that the code must also provide a proper procedural safeguard before the party's property interests are destroyed. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Dallas Cent. Appraisal Dist.*, 765 S.W.2d 451, 453 (Tex.App.—Dallas 1988, writ denied). Under *Logan*, we must determine (1) whether appellees were deprived of a protected interest and, if so, (2) what process was due. *See Logan*, 455 U.S. at 428, 102 S.Ct. at 1153–54.

■ Collecting taxes always deprives a taxpayer of property. *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36, 110 S.Ct. 2238, 2250, 110 L.Ed.2d 17 (1990). Thus, a taxing unit must always afford a property owner due process of law. *Id.*; *see Bank of Am. Nat'l Trust*, 765 S.W.2d at 453–54 (holding procedural due process applies to proceedings under the code). Giving the party assessed an opportunity to be heard before some assessment board at some stage of the proceedings satisfies the requirement of due process. *First Nat'l Bank of Bellaire v. Huffman Indep. Sch. Dist.*, 770 S.W.2d 571, 572 (Tex.App.—Houston [14th Dist.] 1989, writ denied), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 967 (1990); *Texas Pipe Line Co. v. Anderson*, 100 S.W.2d 754, 762 (Tex.Civ. App.—Austin, writ ref'd), *cert. denied*, 302 U.S. 724, 58 S.Ct. 45, 82 L.Ed. 559 (1937).

Under the code, property taxes are the personal obligation of the party who owns or acquires the property on January 1 of the year for which the tax is assessed. *See* TEX. TAX CODE ANN. § 32.07(a) (Vernon Supp. 1997); *General Elec. Capital Corp. v. City of Corpus Christi*, 850 S.W.2d 596, 599 (Tex. App.—Corpus Christi 1993, writ denied) (holding the taxing authority cannot assess property taxes against a party who did not possess or have a security interest in the property on January 1 of the tax year in question). Selling the property during the tax year will not relieve the January 1 prop-

erty owner of personal liability for the taxes. *See* TEX. TAX CODE ANN. § 32.07(a) (Vernon Supp.1997).

### 2. Application of Law to Facts

We first note the trial court did not grant appellees' motion for summary judgment on the specific grounds that appellees were deprived of property without due process of law or that section 25.25 of the code was unconstitutional. Nor did the trial court specifically hold that section 25.25(d) of the code was constitutional and did not deprive appellees of property without due process.

Appellees moved for summary judgment, alleging both that section 25.25(d) is unconstitutional on its face and that appellants applied it to deprive appellees of property without due process of law. Appellees contended that they had a protected property interest in a right to an administrative hearing under section 25.25(d) to contest the properties' 1993 appraised values. Appellees ignore that they purchased the properties knowing the amount of the 1993 property taxes assessed, that the prior owners contested the appraisals, and the prior owners reached settlement agreements with appellants.[6]

Appellees rely on *Bank of America National Trust* and *Sowell* to support their position that after purchasing the properties, they had the right to use administrative procedures under the tax code. *See Bank of Am. Nat'l Trust,* 765 S.W.2d at 453; *Sowell,* 900 S.W.2d at 86. Appellees misplace their reliance. Here, unlike either *Bank of America National Trust* and *Sowell,* the previous owners exercised their right of protest under the tax code, ultimately entered into settlement agreements, and were afforded procedural due process—a critical factual distinction.

Appellees purchased the properties knowing that the previous owners had exercised their right to a hearing and had entered into settlement agreements. If the previous property owner was the owner of record on January 1 of the tax year, any subsequent owner in that same year has only those rights of the previous owner.

■ Section 25.25(d) affords due process when due process has not previously been afforded. A previous property owner who has had its opportunity to be heard before an assessment board has been afforded due process. Because the previous owners exercised all of their rights to contest the 1993 appraised values, we conclude the previous owners were not deprived of a protected property interest.

We hold that the previous property owner's due process satisfies the subsequent property owner's right to due process in the same tax year. Any subsequent denial of appellees' request for a hearing under section 25.25(d) could not deprive appellees of procedural due process.[7] Accordingly, we sustain appellants' fifth, sixth, and seventh points of error and overrule appellees' third cross-point of error.

The trial court erred in granting appellees' motion for summary judgment and ordering the Review Board to conduct an administrative hearing on appellees' motions to correct the appraisal roll. We reverse the trial court's judgment. We render the judgment that the trial court should have rendered, that appellees take nothing.

---

6. In their appellate briefs, appellants maintain that appellees purchased the properties with knowledge of the 1993 property tax status. Because appellees do not challenge appellants' assertion, we accept appellants' statement as true.

7. *See ADP of New Jersey, Inc. v. Parsippany–Troy Hills Township,* 14 N.J.Tax 372, 377 (1994) (holding that, if a previous property owner has had its opportunity to be heard before an assessment board, then the previous property owner's due process satisfies the subsequent property owner's right to due process).