IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2001 Session

# BILLY RAYMOND GEORGE v. MISTY DRIVER GEORGE MULLICAN

**Direct Appeal from the Chancery Court for Cannon County**
**No. 92-19      Robert E. Corlew, III, Chancellor**

---

**No. M2000-01106-COA-R3-CV - Filed June 18, 2001**

---

This appeal arises from a child custody action. After divorce, Mother was awarded custody of Child. Father later filed a petition for contempt charging that Mother was denying him visitation. Mother denied these charges and counter-filed claiming that Father had failed to meet his support obligations. While these matters were pending, Mother filed a report with the Department of Children's Services that Father had sexually molested Child. Mother later admitted these charges to be false, and as a result, Father gained temporary custody of Child. Mother later filed this petition requesting the return of Child to her custody. The trial court refused, instead finding that Father was the more fit parent and awarding him permanent custody. Mother appealed this decision. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHER, J., joined.

Daryl M. South, Murfreesboro, Tennessee, for the appellant, Misty Driver George Mullican.

J. G. Mitchell, III and William E. Tillery, Murfreesboro, Tennessee, for the appellee, Billy Raymond George.

## OPINION

Billy Raymond George and Misty Driver George Mullican were divorced on September 10, 1993. Ms. Mullican was awarded custody of the parties' only child, Tyler, pursuant to the final divorce decree.[1] In October of 1997, Mr. George filed a petition for contempt against Ms. Mullican charging that he was being denied visitation. In her reply and counter petition, Ms.

---

[1]Tyler was born on August 14, 1992.

Mullican denied these charges and asserted that Mr. George had failed to provide proper financial support for Tyler. Both petitions were still pending in April of 1998 when Ms. Mullican filed a report with the Department of Children's Services (Department) alleging that Tyler had been sexually abused by Mr. George when he was both three and five years old.

After an investigation, Department determined that Ms. Mullican had made a false report of sexual abuse.[2] In addition, Department determined that Tyler's maternal grandmother, Ms. Mullican's mother, had coached the child to report he had been sexually abused by his father.[3] As a result of these findings, Department removed Tyler from her custody and transferred custody to Mr. George.[4] Ms. Mullican later filed a Motion for Emergency and Immediate Change of Custody, requesting that Tyler be returned to her custody. She claimed that, notwithstanding the Department's findings, Tyler had been abused by Mr. George.[5] The trial court allowed Mr. George to retain temporary custody of Tyler pending the outcome of a hearing. The court also appointed a child psychologist to conduct a full psychosexual evaluation of Tyler and report the results to the trial court.[6]

The psychologist, Jamie Berryman, reported that Tyler's statements of abuse were credible and consistent. However, she found Tyler's statements lacked emotion or specific details and hypothesized that this lack of emotion or details could be the result of the time period that had past since the alleged abuse. The psychologist also testified that she could not specifically state that Tyler had been abused, saying that this determination was a question she normally left for the courts to answer.

After consideration of all the presented evidence,[7] the court found that the allegations that Mr. George had sexually abused his son, Tyler, were not proven by the preponderance of the

---

[2]Ms. Mullican eventually admitted to filing a false report after an interrogation by Department and local law enforcement officials.

[3]In light of this revelation, the trial court issued an order on January 20, 1999, barring Ms. Mullican from allowing her mother (Tyler's maternal grandmother) from being in Tyler's presence.

[4]This action was taken by the Department with the consent of Ms. Mullican. Ms. Mullican also agreed to prevent her mother from spending time alone with any of her children.

[5]Ms. Mullican claimed that her admission that she made a false accusation of child abuse was improperly coerced by the Department. She also protested that she agreed to the Department's request to change Tyler's custody to Father under duress.

[6]The court undertook this action with the agreement and cooperation of both the parties.

[7]The record before this court includes only a transcript of the proceedings for February 28, 2000. In this transcript, both the parties and the court reference earlier proceedings that dealt with temporary custody and visitation. As transcripts of the earlier hearings are not available, this court has relied upon the opinion letters of the trial court issued after each of the previous proceedings in our review.

evidence.[8]  In addition, the court found that it was in the best interest of the child for primary custody of Tyler to be given to Mr. George.[9]  Ms. Mullican appealed.

The issues, as presented by the Appellant, are as follows:

I.      Was the trial court incorrect in finding that the alleged sexual abuse of the minor child was not proven by the preponderance of the evidence?

II.     Was the trial court incorrect in its finding that it is in the best interest of the minor child to give primary custody of the child to Mr. George?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness.  *See* Tenn. R. App. P. 13(d).  Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence.  *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); Tenn. R. App. P. 13(d).  With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness.  *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d).

### Preponderance of the Evidence

In order to determine if the trial court correctly decided that the alleged sexual abuse of Tyler was not proven by the preponderance of the evidence, it is necessary for this court to examine the facts surrounding this case.  We first note that all parties have agreed that no abuse of Tyler had occurred during the nineteen months that the custody matter was pending.  As the trial court stated, "such time period is in striking contrast to prior times when allegations were made by the mother on frequent occasions."  Ms. Mullican had charged Mr. George with abusing Tyler before this period in several complaints to the Department.  However, Ms. Mullican later admitted to Department officials that she had made a false report concerning those allegations.[10]  A further study of the record reveals that the only proof that Mr. George abused Tyler comes from accusations by Ms. Mullican and her mother and Department records that pre-date Ms. Mullican's admission of making a false report.  Such proof can hold little weight in any factual determination of child abuse, as this proof is tainted by the later admission that the allegations

---

[8]The trial court noted that section 36-6-106 of the Tennessee Code required that sexual abuse be established by "a clear preponderance of the evidence."  While the court questioned if the statute meant "such evidence must be proven by clear and convincing evidence, by a mere preponderance of the evidence, or by some newly established standard somewhere between the two," it specifically found that the allegations were not proven by a mere preponderance of the evidence.

[9]With this ruling, the court changed Mr. George's temporary custody of Tyler, which had been awarded by the Department with Ms. Mullican's consent, to permanent full custody.

[10]At a later court appearance, Ms. Mullican acknowledged that she had made this admission to the Department.

were false. We also note that the investigation by the court-appointed child psychologist did not result in a finding that Tyler was actually abused. In light of all of these facts and upon consideration of the entire record, this court cannot state that the trial court's determination that Mr. George did not sexually abuse Tyler was contrary to the preponderance of the evidence. Thereby, this court hereby affirms the trial court's findings in this matter.

### Best Interest of the Child

> While many proceedings in the law are factually-driven, this is particularly true of custody cases, both on initial awards as well as in cases involving a request to modify a previous award. *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). In such cases, a trial court has wide discretion, and we will not tamper with that discretion unless the facts demonstrate that the trier of fact has abused his or her discretion. *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). The welfare of the child is always the paramount consideration. *Id.*

*Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

The threshold issue in any petition to permanently modify the custody of a child is whether there has been a material change of circumstances since the previous permanent custody decision.[11] *See, e.g., Placencia v. Placencia*, 3 S.W.3d 497, 499 (Tenn. Ct. App. 1999); *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981). Once it is determined that there has been a material change of circumstances, a court then makes its decision of which parent should have permanent custody based upon the best interest of the child. *See, e.g., Placencia*, 3 S.W.3d at 499; *Varley v. Varley*, 934 S.W.2d 659, 665-66 (Tenn. Ct. App. 1996).

For a court to determine a custody arrangement that will be in the best interest of a child, it must "assess the comparative fitness of the parties seeking custody in light of the particular circumstances of the case, considering the relevant factors, which are the same in a modification proceeding as those criteria used in establishing the initial custody order." *Lurie v. Manning*, No. 01A01-9807-CV-00376, 1999 WL 732692, at *2 (Tenn. Ct. App. Sep. 21, 1999) (*no perm. app. filed*) (citing *Ruyle v. Ruyle*, 928 S.W.2d 439, 442 (Tenn. Ct. App. 1996); *Matter of Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995)). Section 36-6-106 of the Tennessee Code gives the factors that should be considered by the trial court. That section states:

> In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:

---

[11] In the case currently before us, the Appellant has not challenged the trial court's determination that there has been a material change of circumstances requiring the court to revisit the custody arrangements.

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (Supp. 2000).

In the case currently before this court, it is clear that the trial court carefully considered all of the above factors in its custody determination. The trial court specifically cited the above provisions in its March 10, 2000 initial ruling. Thus, as "a trial court has wide discretion, . . . we will not tamper with that discretion unless the facts demonstrate that the trier of fact has abused his or her discretion." *Brumit*, 948 S.W.2d 15 at 740 (citing *Suttles*, 748 S.W.2d at 429). We

find no such abuse of discretion in the trial court's decision in this case.  As a result, we hereby affirm the trial court's ruling awarding custody of Tyler to Mr. George.

## Conclusion

The judgment of the trial court is affirmed.  Costs on appeal are assessed against the appellant, Misty Driver George Mullican, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE