

NUMBER 13-17-00520-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**VALERUS FIELD SOLUTIONS, LP,**                                  **Appellant,**

**v.**

**MATAGORDA COUNTY APPRAISAL DISTRICT,**              **Appellee.**

---

On appeal from the 130th District Court
of Matagorda County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Contreras, Longoria, and Hinojosa
Memorandum Opinion by Justice Longoria**

Appellant Valerus Field Solutions, LP (Valerus) appeals the trial court's granting of appellee Matagorda County Appraisal District's (MCAD) traditional motion for summary judgment dismissing Valerus's appraisal challenge. Valerus contends that the trial court erred by granting the motion for summary judgment because (1) MCAD did not prove its

defense of waiver and (2) Valerus proved an exception to the defense of waiver. We affirm.

## I.  BACKGROUND

On January 3, 2014, Valerus became the owner of a stock of inventory located in Matagorda County, Texas, previously owned by Valerus Compression Services LP, now known as AXIP Energy Services LP (AXIP). AXIP's 2014 tax year business personal property tax statement valued all of its personal property in the amount of $57,834,796.58, which included the subject inventory valued at $56,452,302.54.

On April 30, 2014, AXIP filed a "Property Owner's Affidavit of Evidence to the Appraisal Review Board" protesting a denial, modification, or cancellation of an exemption. AXIP claimed that it was entitled to a "freeport exemption," from personal property tax for that portion of the inventory which constituted goods exported from Texas. AXIP also filed evidence to support its claim for exemption in the form of a 2014 Freeport Exemption Application, a 2014 Inventory Worksheet, and a 2014 Texas Appointment of Agent Form. The exemption application lists the "market value of [AXIP's] inventory on January 1 of [2014]" as $56,452,303.

MCAD received AXIP's protest and accompanying evidence to support its claim to a freeport exemption. On May 21, 2014, MCAD appraised AXIP's total personal property at $60,054,700, which also included the subject inventory valued at $56,452,303. MCAD's appraised total value of the personal property of AXIP was over $2,000,000 higher than AXIP's 2014 tax year business personal property tax statement.

On July 18, 2014, MCAD and AXIP entered into a written agreement resolving the discrepancy of values and signed a "Settlement of Waiver and Protest" which stated:

2

"AGREED TO THE SETTLED VALUE FOR THE 2014 TAX YEAR IN THE AMOUNT OF $60,054,700 . . . ." The value agreed to on that date was then certified to the tax roll for Matagorda County. *See* TEX. TAX CODE ANN. §22.01(b) (West, Westlaw through 2017 1st C.S.) (providing that a person shall render for taxation all tangible personal property that it owns, manages, or controls as a fiduciary on January 1). When Valerus acquired the inventory, it reimbursed AXIP for the 2014 taxes.

Valerus contends that the $56,452,303 value given to the inventory was in error. Valerus argues the true value is $17,755,303, a difference of $38,696,997. Upon discovering the alleged error, on January 27, 2015, Valerus filed a motion with the Matagorda County Appraisal Review Board (Board) to correct the overstated valuation of the inventory. The Board denied the reopening of the protest due to "lack of jurisdiction" based on the signed settlement of waiver and protest.

Valerus then filed a petition for review with the district court, appealing the Board's decision. Valerus's initial petition brought suit against both MCAD and the Board, but Valerus later nonsuited the Board. *See* TEX. TAX CODE ANN. § 42.21(b) (West, Westlaw through 2017 1st C.S.). MCAD moved for summary judgment, arguing the motion was prohibited under section 25.25(d)(2) of the Texas Tax Code pursuant to the signed settlement. *See id.* § 25.25(d)(2) (West, Westlaw through 2017 1st C.S.). The trial court granted MCAD's motion for summary judgment. This appeal followed.

## II. DISCUSSION

Valerus contends that the trial court erred in granting MCAD's motion for summary judgment because MCAD relied upon a waiver that was not applicable to Valerus's

3

challenge of the value of the inventory. Alternatively, Valerus contends that should the waiver be applicable, the waiver was a result of mutual or unilateral mistake.

## A. Standard of Review

When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). We review the trial court's summary judgment de novo. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id*. at 215 (citing *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

When a defendant moves for summary judgment based on an affirmative defense, it is the movant's burden to prove conclusively all elements of the affirmative defense as a matter of law such that there is no genuine issue of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984). The movant-defendant must come forward with summary judgment evidence with respect to each element of the affirmative defense. *Nichols v. Smith*, 507 S.W.2d 518, 520 (Tex. 1974). Unless the movant conclusively establishes the affirmative defense, the non-movant plaintiff has no burden in response to a motion for summary judgment filed on the basis of an affirmative defense. *Torres v. W. Cas. & Sur. Co.*, 457 S.W.2d 50, 52 (Tex. 1970). If a movant establishes an affirmative defense which would bar the suit as a matter of law, the non-moving party must then adduce summary judgment proof raising a fact issue in avoidance of the affirmative defense, for example, facts which would bring the matter within an exception

4

or defense to the movant's affirmative defense. *Palmer v. Ensearch Corp.*, 728 S.W.2d 431, 435 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *see Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied).

## B.     Applicable Law and Discussion

MCAD moved for summary judgment on the basis that Valerus's claim is barred by Texas Tax Code section 25.25(d) because the value of the property was established as a result of a written agreement. *See* Tex. Tax Code Ann. § 25.25(d)(2).[1] MCAD's argument is based on the signed "Settlement and Waiver of Protest" between MCAD and APIX. MCAD and APIX reached their agreement subsequent to APIX filing a protest seeking the freeport exemption. "[I]t is clear from the nature of the act and the language of the statute that the purpose of section 25.25(d) is to permit a property owner to file a late appraisal protest, but prevent multiple adjudications on a protested appraisal in the same year." *Jim Sowell Constr. Co. v. Dallas Cent. Appraisal Dist.*, 900 S.W.2d 82, 85 (Tex. App.—Dallas 1995, writ denied).

---

[1] The statute provides:

(d) At any time prior to the date the taxes become delinquent, a property owner or the chief appraiser may file a motion with the appraisal review board to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the owner's property. However, the error may not be corrected unless it resulted in an appraised value that exceeds by more than one-third the correct appraised value. If the appraisal roll is changed under this subsection, the property owner must pay to each affected taxing unit a late-correction penalty equal to 10 percent of the amount of taxes as calculated on the basis of the corrected appraised value. Payment of the late-correction penalty is secured by the lien that attaches to the property under Section 32.01 and is subject to enforced collection under Chapter 33. The roll may not be changed under this subsection if:
. . . .
(2) the appraised value of the property was established as a result of a written agreement between the property owner or the owner's agent and the appraisal district.

Tex. Tax Code Ann. § 25.25(d)(2) (West, Westlaw through 2017 1st C.S.).

In response, Valerus argues that the value was not the subject of the protest and therefore cannot be contained within the signed settlement and waiver. We are not persuaded by this argument. APIX's protest seeking the freeport exemption relied upon the valuation of its inventory. In order to determine the amount of the exemption sought, both AXIP and MCAD had to agree on a total value of the personal property, which included the value of the inventory. An agent on behalf of APIX and a representative on behalf of MCAD signed the "Settlement and Waiver of Protest" specifically agreeing to "THE SETTLED VALUE FOR THE 2014 TAX YEAR . . . ." This written and signed agreement established the appraised value and bars Valerus from filing a motion to change the appraisal roll. *See* TEX. TAX CODE ANN. § 25.25(d)(2); *see also Dallas Cent. Appraisal District v. Park Stemmons, Ltd.*, 948 S.W.2d 11 at 15 (holding that section 25.25(d) makes no distinction between current owner and previous owner).

Alternatively, Valerus contends that if the signed agreement bars it from filing a motion to change the appraisal roll, the agreement should not be considered because it is invalid due to a mutual or unilateral mistake with regard to the settled value. MCAD argues that this does not remove the bar to Valerus's claim under section 25.25(d)(2). *See id.* Section 25.25(d) expressly applies to situations such as this, where a taxpayer discovers after the appraisal roll has been certified that error caused an incorrect appraised value for the property. *See id.* Valerus, however, argues that its "mistake" argument does not refer to the error in valuation contemplated in section 25.25(d), but rather represents a common law defense to the validity of the signed waiver. MCAD relies

6

on the signed settlement agreement to contradict Valerus's mutual or unilateral mistake argument pursuant to section 1.111(e) of the Texas Tax Code.[2]

In making its argument under the Texas Tax Code, MCAD relies on *Signal International Texas LP v. Orange County*, No. 09-13-00412-CV, 2014 WL 7183667 (Tex. App.—Beaumont Dec. 18, 2014, pet. denied) (mem. op.). Valerus argues that reliance on *Signal* is misplaced, and instead relies on *In re Willacy County Appraisal District*, No. 13-13-00550-CV, 2013 WL 5942707 (Tex. App.—Corpus Christi Nov. 1, 2013, no pet.) (mem. op).

In *Signal*, the taxpayer, Signal, rendered a barge as part of its personal property with the Orange County Appraisal District (OCAD). *Signal*, 2014 WL 7183667, at *1. Subsequently, Signal and OCAD entered into an agreement on the value of Signal's personal property and reduced that agreement to writing. *Id*. After the agreement was signed, Signal discovered that the barge should not have been included in the assessment, which would require a correction and relief from their 2011 taxes in the amount of $335,838.79. *Id*. Signal sought rescission or reformation of the settlement agreement, but the trial court granted OCAD's plea to the jurisdiction. *Id*. at *1–2. On appeal, Signal argued the trial court erred because Signal had no recourse to correct the

---

[2] That statue provides:

> (e) An agreement between a property owner or the owner's agent and the chief appraiser is final if the agreement relates to a matter:
>
> (1) which may be protested to the appraisal review board or on which a protest has been filed but not determined by the board; or
>
> (2) which may be corrected under Section 25.25 or on which a motion for correction under that section has been filed but not determined by the board.

TEX. TAX CODE ANN. § 1.111 (West, Westlaw through 2017 1st C.S.)

7

error and there was "mutual mistake" made by the parties. *Id*. at *2. The Beaumont court of appeals held that the settlement agreement was a section 1.111(e) agreement because it concerned a matter that could have been protested to the appraisal review board. *Id*. at *3. Signal argued that, even if the agreement fell within section 1.111(e), it is subject to contract law and should be rescinded or reformed because there was a mutual mistake regarding the barge. *Id*. at *4. Signal placed its reliance on *Willacy*, arguing that it was directly on point as it allowed the common law defense of fraud applied to a similar situation. *Id*. at *4 (citing *Willacy*, 2013 WL 5942707, at *11–12). The court in *Signal*, however, disagreed with Signal's contention, noting that "*Willacy* involved allegations of fraud, not 'mutual mistake.'" *Id*. Furthermore, the court in *Signal* explained that in *Willacy* this Court specifically limited our review of the case to determining whether there was entitlement to mandamus relief. *Id*. at *5. The court in *Signal* affirmed the trial court's dismissal and held that the agreement was a final resolution. *Id*. at *6.

Valerus's contention that our holding in *Willacy* extends the contract law defense of mistake to agreements under the tax code is misplaced. In *Willacy*, we specifically stated "We are not directed to, nor do we find any authority, that expresses an opinion on whether the defense of fraud may be used in the context of the present controversy under the tax code." *Willacy*, 2013 WL 5942707, at *10. Subsequently, the Texas Supreme Court held that the common law defense of fraud could render a section 1.111(e) agreement voidable. *See Willacy Cty. Appraisal District v. Sebastian Cotton & Grain, Ltd.*, No. 16-0626, 2018 WL 1974485, at *15 (Tex. Apr. 27, 2018). However, unlike in the case at bar, in *Sebastian Cotton*, the section 1.111(e) agreement was contested on the grounds of fraud, not mistake, because the property owner who signed the agreement

was not the true owner of the property. *See id.* at *12. The argument of fraud in *Sebastian Cotton* is based on the question of whether or not the entity that signed as the property owner in the section 1.111(e) agreement in fact knew that they were not the owner when entering into the agreement. *See Sebastian Cotton & Grain, Ltd. v. Willacy County Appraisal Dist.,* 492 S.W.3d 824, 826 (Tex. App.—Corpus Christi 2016), rev'd, 16-0626, 2018 WL 1974485 (Tex. Apr. 27, 2018). Valerus's argument that mistake, like fraud, should render the agreement void or voidable is misplaced pursuant to section 25.25(d), which allows for a correction to an error, or mistake, in valuation under certain circumstances and which states that an error may not be corrected when "the appraised value of the property was established as a result of a written agreement between the property owner or the owner's agent and the appraisal district. TEX. TAX CODE ANN. § 25.25(d)(2).

Here, the section 1.111(e) agreement was signed by the appropriate parties and is a valid agreement. APIX and MCAD entered into a written and signed agreement which specifically stated the parties agreed upon a settled value of APIX's property for the 2014 tax year, which was acquired by Valerus. In reviewing the signed settlement agreement, we have already determined that the agreement was a result of a protest, meaning it falls squarely within the parameters set out by section 1.111(e) because it concerns a matter that could have been protested to the appraisal review board. *See* TEX. TAX CODE ANN. § 1.111(e); *see also id.* § 41.41(a)(4) (West, Westlaw through 2017 1st C.S.) (allowing property owners to protest the denial, in whole or in part, of a partial exemption). Section 1.111(e) agreements are final, even without approval or adoption by the appraisal board. *See Signal*, 2014 WL 7183667, at *3 (citing *BPAC Tex., LP v. Harris Cty. Appraisal Dist.*,

No. 01-03-01238-CV, 2004 WL 2422033, at *7 (Tex. App.—Houston [1st Dist.] Oct. 28, 2004, no pet.) (mem. op.)).

Accordingly, we conclude that the signed agreement was both applicable and a final resolution of Valerus's right to protest the value of its property.  Valerus's sole issue is overruled.

### III.  CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Delivered and filed the
11th day of October, 2018.