IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 26, 2004

_____

NO. 07-04-0285-CV

IN RE EXXONMOBIL CORPORATION, ET AL., RELATORS

_____

NO. 07-04-0286-CV

IN RE CHEVRONTEXACO CORPORATION, ET AL., RELATORS

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**ON PETITION FOR MANDAMUS**

Amerada Hess Corporation, *et al.* and ChevronTexaco Corporation, *et al.*, as relators,[1] have filed petitions seeking writs of mandamus directing respondent, the

_____

[1]Relators in cause number 07-04-0285-CV are Amerada Hess Corporation; Amerada Hess Trading Company; BP Corporation North America, Inc., f/k/a Amoco Corporation; BP America Production Company f/k/a Amoco Production Co.; Arco Oil & Gas Co.; Atlantic Richfield Company a/k/a ARCO Permian; Altura Energy Ltd. n/k/a Occidental Permian Ltd.; Altura Energy LLC n/k/a Occidental Permian Manager LLC; Marathon Petroleum Company; and Marathon Oil Company.

Relators in cause number 07-04-0286-CV are ChevronTexaco Corporation; Chevron U.S.A., Inc. a/k/a Chevron Products Company; Texaco Inc.; Texaco Exploration & Production, Inc.; Four Star Oil & Gas Company; Texaco Trading and Transportation, Inc; Texaco Refining and Marketing, Inc. a/k/a Texaco U.S.A.; ExxonMobil Corporation f/k/a Exxon Corporation a/k/a Exxon Company, USA; Mobil Producing Texas & New Mexico,

Honorable Kelly G. Moore, judge of the 121st District Court, Yoakum County, to vacate a May 3, 2004, order entered in cause number 8198 pending in that court. The order denied pleas to the jurisdiction. Real parties in interest are Yoakum County, Denver City Independent School District and Plains Independent School District.

In cause 8198, Yoakum County and Denver City ISD sued some twenty-eight companies, including relators,[2] that they allege own or operate[3] oil properties[4] in Yoakum County, asserting causes of action for fraud and conspiracy with respect to the valuation of the properties for ad valorem tax purposes. Plains ISD intervened, making the same assertions.

---

Inc.; ExxonMobil Oil Corporation a/k/a Exxon f/k/a Mobil Oil Corporation; Shell Oil Company; Shell Exploration & Production Company; Shell Western E&P, Inc; Shell Oil Products Company; Equilon Enterprises, LLC; Ashland Inc.; and Plains Marketing L.P.

The two petitions for mandamus are not identical, but they are not inconsistent. We do not consider it necessary to distinguish between them in our discussion of the issues presented.

[2]All the defendants in trial court cause number 8198 except one, Shell Frontier Oil & Gas, Inc., are included among the relators in one or the other of the two mandamus proceedings.

[3]Mineral interests may be listed in appraisal records in the name of the operator designated with the Railroad Commission of Texas. Tex. Tax Code Ann. § 25.12(b) (Vernon 2001).

[4]In their pleadings, the taxing units use the term "fixed oil interests" for the oil-producing mineral interests owned or operated by relators.

Concluding that the district court does not have jurisdiction over the suit brought by local taxing units[5] and that mandamus is available to correct the trial court's erroneous contrary conclusion, we will conditionally grant the writs relators seek.

**Taxing Units' Pleadings**

The taxing units' pleadings state that appraisal districts, and the independent appraisers whose services they utilize, use historical sales prices for oil as a part of their calculation of the income projected to be received in the future from oil properties. That estimate of future income, in turn, is used in valuing the oil properties for ad valorem tax purposes. The historical price data used by appraisers includes, the taxing units allege, "posted" prices for oil and sales prices reported to the Texas Comptroller of Public Accounts. The taxing units allege that the defendant companies, knowing and intending that appraisers rely on this information, engaged in a conspiracy and fraud carried out by misrepresentations of the market price for oil through various transactions, including posted price sales;[6] sales of oil to subsidiary or affiliated companies at below-market prices; and

---

[5]We will use the term "taxing units" for the real parties in interest, following nomenclature used by the parties and by the Tax Code. Section 1.04(12) defines "taxing unit" to include counties and school districts, as well as other political units authorized to impose ad valorem taxes on property.

[6]The petition alleges that "Posted prices are the prices that purchasing oil companies publish by bulletin to express the amount that the company is willing to pay for crude oil at the lease. Defendants fraudulently misrepresented that transactions based on posted prices reflected the market value of oil, when in fact these transactions understated market value."

"buy/sell" or "swap sales."[7] The taxing units allege that the defendants or their subsidiaries or affiliates fraudulently misrepresented that each of these types of transactions reflected the market value of oil when the transactions actually understated market value, thereby knowingly and intentionally misrepresenting the market value of oil to the Comptroller, to independent appraisers hired by appraisal districts, to appraisal districts and to the taxing units. The taxing units further allege the defendants used affiliates and subsidiaries to report fraudulently undervalued prices for oil, deliberately using thousands of transactions with them to "generate non-arms length, non-market prices," which they then reported as the market value of oil. In some instances, the taxing units' pleadings allege, the affiliates and subsidiaries had no separate corporate existence, but "existed only on paper," furthering the fraud and concealing it from taxing authorities. The taxing units also allege the defendants conspired together to defraud the taxing units, *inter alia*, by misrepresenting that posted price sales, affiliate sales and buy/sell or swap sales reflected the market value of oil, all of which constituted a "systematic price undervaluation" that reduced the taxable value of their mineral interests and caused the taxing units to lose tax revenue. It is alleged that each of the affiliated companies participating in the fraud did so for the benefit of the defendants, and that the defendants accepted monetary benefits from the scheme, and ratified the fraudulent conduct of their agents. The taxing units allege these actions caused

---

[7]The petition alleges: "Buy/sell or swap sales occur when two parties to a transaction swap a certain volume of commodity in one geographic area in exchange for the agreement to do the same in another geographic area, accounting for transportation costs by cash payment. The parties record these transactions as actual sales of oil and provide a reported price for these transactions that understates the market value of oil. Often, Defendants reported revenues based on posted price as the price at which buy/sell or swap sales occurred . . ."

the appraisal district[8] to undervalue, for ad valorem tax purposes, mineral interests owned or operated by the defendants resulting in an "underassessment and undercollection of taxes" by the taxing units, thereby causing them damage by "depriving them of substantial amounts of revenues." Alleging the defendants' conduct was willful and malicious, the taxing units seek compensatory and exemplary damages, interest, costs and attorneys fees.

The suit is not one to collect delinquent taxes. There is no allegation the defendants failed to pay the taxes assessed them with respect to the oil interests.

Relators contend the trial court's determination that it had jurisdiction was an abuse of its discretion because it was a misapplication of Tax Code provisions giving exclusive original jurisdiction over property appraisals to the appraisal district and the appraisal review board. The taxing units respond that their suit is one asserting common law tort causes of action and nothing in the Tax Code deprives them of their right to assert such claims against tortfeasors such as the defendant companies or deprives the district court of jurisdiction to hear them. They emphasize the general jurisdiction of district courts under our state constitution and statutes.

**Standards for Plea to Jurisdiction and Mandamus**

In reviewing the trial court's ruling on a plea to the jurisdiction, we review the pleadings and any evidence relevant to the jurisdictional issue. *See Texas Dep't of*

---

[8]The Yoakum County Appraisal District is not a party to the suit.

*Transportation v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002). We will construe the pleadings liberally in the taxing units' favor. *Id.* at 867. The pleadings must allege facts, however, that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Texas Ass'n of Bus. v. Texas Air Control Board*, 852 S.W.2d 440, 446 (Tex. 1993). Whether the trial court has subject matter jurisdiction is a legal question that is reviewed *de novo*. *State* ex rel. *State Dep't of Highways and Public Transp. v. Gonzales*, 82 S.W.3d 322, 327 (Tex. 2002).

A writ of mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law, when there is no other adequate remedy by law. *Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994). In regard to analyzing the law or application of the law to the facts, a trial court has no "discretion," and must both properly analyze and apply the law to the facts. Therefore, a clear failure to correctly analyze or apply the law will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). An erroneous legal conclusion, even in an unsettled area of the law, is an abuse of discretion. *Perry v. Del Rio*, 66 S.W.3d 239, 257 (Tex. 2001).

**Tax Code Provisions**

Article VIII, section 1 of our state constitution requires that all real property, which includes mineral interests, unless exempt, be taxed "in proportion to its value, which shall be ascertained as may be provided by law." Tex. Const. art. VIII, § 1(b). The same section requires that taxation be "equal and uniform." Tex. Const. art. VIII, § 1(a). The constitution

further requires that "all lands and other property not rendered for taxation by the owner thereof shall be assessed at its fair value by the proper officer." Tex. Const. art. VIII, § 11. By a 1980 amendment, article VIII, section 18 of the constitution requires that a "single appraisal" within each county of property subject to ad valorem taxation is to be provided by general law. The general law passed by the Legislature to codify the single appraisal concept was the Property Tax Code.[9] *Wilson v. Galveston County Cent. Appraisal Dist.*, 713 S.W.2d 98, 100 (Tex. 1986). The Tax Code thus codifies the constitutional obligation of our state government to appraise and assess property for purposes of taxation. *See Atascosa County v. Atascosa County Appraisal Dist.*, 990 S.W.2d 255, 257 (Tex. 1999). As a part of this codification, the Legislature in the Tax Code created appraisal districts to begin operation January 1, 1982, as political subdivisions of the state. *Id.*; *see* § 6.01 (establishing an appraisal district in each county and declaring it "responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district"). The Tax Code also established an appraisal review board for each district. §§ 6.41, 41.01.

An appraisal district is governed by its board of directors, who are district residents selected by the taxing units in the district.[10] *See* §§ 6.03-6.035. The district's board of

---

[9]The Property Tax Code is the short title of Title I, consisting of Chapters 1 through 43, of the Tax Code. Tex. Tax Code Ann. § 1.01 (Vernon 2001). All references to the Tax Code in this opinion are to sections of Title I; for simplicity, we will refer to it as the Tax Code. Unless otherwise indicated, all section references refer to the Texas Tax Code Annotated (Vernon 2001).

[10]The county tax assessor-collector may serve as a director under some circumstances. *See* § 6.03(a).

directors appoints the chief appraiser, *see* § 6.05(c), and the appraisal review board, also consisting of individuals residing in the district. *See* § 6.41.

Among the duties of the chief appraiser is the preparation each year of appraisal records listing all property taxable in the district and stating the appraised value of each. § 25.01. The form of appraisal records is prescribed by the Comptroller.[11] Generally, taxable property is appraised at its market value as of January 1. Market value, defined by section 1.04(7), is to be determined by the application of generally accepted appraisal methods and techniques. § 23.01. Real property[12] must be reappraised at least as often as every three years. § 25.18. Section 25.01(b) authorizes an appraisal district to contract with a private appraisal firm to perform appraisal services. The taxing units' pleadings indicate that Yoakum County Appraisal District has engaged an appraisal firm to value oil and gas properties.

---

[11]The Tax Code provides for substantial involvement of the Comptroller, both direct and indirect, in the work of appraisal districts. It requires the Comptroller, *inter alia*, to adopt rules establishing minimum standards for administration and operation of a district, to provide for training for appraisal review board members and appraisers, to prescribe the contents of forms and a uniform record system, to issue appraisal manuals and other publications, to publish an annual report of the operations of appraisal districts, and to conduct an annual study of appraisal levels in each district. §§ 5.03-5.101. It further requires the Comptroller to review the standards, procedures and methodology used by certain districts to determine compliance with generally accepted appraisal standards and practices and, if a district is not in compliance, to initiate corrective action. § 5.102. It mandates performance audits of appraisal districts by the Comptroller under certain conditions. § 5.12. Section 5.10, requiring the annual study of appraisal levels in each district within each major category of property, authorizes the Comptroller's representatives to inspect property used for the production of income to determine its existence and market value. § 5.10(c). An appraisal review board may request the Comptroller to assist in determining the accuracy of the district's appraisals, and the Comptroller may provide other professional and technical assistance. §§ 5.08, 41.65.

[12]Defined to include minerals in place. § 1.04(2).

Following notice to the property owner of the appraised value, if required,[13] the chief appraiser submits the completed appraisal records to the appraisal review board "for review and determination of protests." § 25.22. Property owners may protest before the appraisal review board adverse actions, including the chief appraiser's determination of the value of property. § 41.41. The Tax Code contains provisions for the board's hearing procedures, including provisions for issuance of subpoenas and taking of evidence. *See* §§ 41.61, *et seq*. Under section 25.24, the appraisal records, as changed by order of the appraisal review board and approved by that board, constitute the appraisal roll for the district. § 25.24. The chief appraiser certifies to the tax assessor of each taxing unit in the district the part of the appraisal roll listing the property taxable by that unit, which part becomes the appraisal roll for that unit. § 26.01(a). The chief appraiser also certifies the appraisal district appraisal roll, or a summary, to the Comptroller.[14] § 26.01(b).

Section 41.01 of the Tax Code sets out the duties of the appraisal review board, which, as relevant here, include the duties to determine protests initiated by property owners, determine challenges initiated by taxing units and "take any other action or make any other determination that this title specifically authorizes or requires." § 41.41. Taxing units are entitled to bring challenges of designated actions before the appraisal review board, among them, challenges to the level of appraisals of any category of property in the district and challenges to an exclusion of property from the appraisal records. § 41.03.

---

[13]See § 25.19.

[14]*Compare* Tex. Gov't Code Ann. § 403.302 (Vernon 1998) (requiring Comptroller to conduct annual study to determine total taxable value of all property in each school district).

Pursuant to section 25.21, the chief appraiser is to enter in the appraisal records real property that was omitted from an appraisal roll in any of the five preceding years, appraising the property as of January 1 of the year it was omitted. Except as provided by section 25.25, providing for correction of errors, chapter 41, generally providing for the hearing of protests and challenges by the appraisal review board, and chapter 42, providing for judicial review, once approved by the appraisal review board, the appraisal roll may not be changed. § 25.25(a).

Chapter 42 of the Tax Code provides for trial *de novo* in the district court on appeal of orders of the appraisal review board determining, *inter alia*, protests of property owners and challenges by taxing units. §§ 42.01, 42.02, 42.031. Chapter 43 authorizes suits by taxing units against the appraisal district to compel the district's compliance with Code provisions, rules of the Comptroller or other applicable law. § 43.01.

**Threshold Conclusions**

Two threshold conclusions guide our dispositions of these proceedings. The first concerns the nature of the underlying suit. Relators call the taxing units' suit an ad valorem tax case. The taxing units call it a fraud and conspiracy case. They disclaim any intention to change the tax appraisals or tax rolls. They note their suit seeks common law damages for fraud and conspiracy, and point out the Tax Code nowhere prohibits counties or school districts from bringing suit to recover damages from those committing tortious acts. The taxing units do not deny, though, that the compensatory damages they seek necessarily would be measured by the reduction in tax revenue caused by the defendants' tortious

conduct. That determination, of course, cannot be made without finding the amount of ad valorem taxes that would have been received by the taxing units if the defendants' minerals had been properly valued. The district court therefore cannot adjudicate the claims asserted in the taxing units' pleading and award the relief they seek without determining the market value, for ad valorem tax purposes, of the mineral interests in question. *See* § 26.09.

The Texas Supreme Court considered an analogous circumstance in *Ector County v. Stringer*, 843 S.W.2d 477 (Tex. 1992). There, constables sued in district court for additional compensation for past services. The court of appeals held the district court had jurisdiction over the suits, despite the holding of *Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 109 (Tex. 1981), that the constitution entrusts the duty to set reasonable salaries for constables to the discretion of the commissioners court and a district court is without jurisdiction to perform that task. The court of appeals distinguished *Vondy* on the ground that Stringer sought a judgment for services rendered in the past, in an amount measured by a reasonable salary. Reversing the court of appeals, the Supreme Court held that the district court would necessarily substitute its judgment for that of the commissioners court by awarding damages in an amount determined by the district court without deference to the commissioners court's authority to set a reasonable salary. It said: "Reclassifying the compensation due for the past services of a constable as a debt is ineffective to circumvent the authority of the commissioners court to set the salary of a constable." *Stringer*, 843 S.W.2d at 480.

Likewise, a suit to recover damages measured by the ad valorem taxes not received by a taxing unit because of undervaluation of property necessarily involves substituting the district court's determination of the proper value of the property for that determined by the appraisal district and approved by the appraisal review board. And, just as reclassifying the claim in *Stringer* as one for a debt did not remove it from the constitutional and statutory provisions vesting authority in the commissioners court, we cannot consider the trial court's jurisdiction over the taxing units' claims here outside the constitutional and statutory provisions governing appraisal of property for ad valorem tax purposes.

Secondly, we conclude the Tax Code provided a remedy for the taxing units. In *Atascosa County*, the Supreme Court held that the chief appraiser's duty under section 25.21[15] to add to the appraisal roll real property omitted in any one of the five preceding years is a nondiscretionary duty. 990 S.W.2d at 257. For purposes of section 25.21, property "omitted" from the appraisal roll includes that undervalued by virtue of taxpayer fraud. *See Beck & Masten Pontiac-GMC, Inc. v. Harris County Appraisal Dist.*, 830 S.W.2d 291, 294-95 (Tex.App.–Houston [14th Dist.] 1992, writ denied). The taxing units attempt to distinguish *Beck & Masten*. The distinctions they point out do not weaken, though, the applicability of its holdings that because of taxpayer fraud the property assessments there

---

[15]The current version of section 25.21, which was effective January 1, 1992, reads as follows:

(a) If the chief appraiser discovers that real property was omitted from an appraisal roll in any one of the five preceding years or that personal property was omitted from an appraisal roll in one of the two preceding years, he shall appraise the property as of January 1 of each year that it was omitted and enter the property and its appraised value in the appraisal records.

-12-

involved were void *ab initio*[16] and thus the property "escaped taxation" (in the wording then appearing in section 25.21). 830 S.W.2d at 295. We see no reason why mineral interests undervalued by the fraudulent activity alleged in the taxing units' pleadings would not be subject to similar treatment.[17]

The challenge procedures provided a further remedy for the taxing units in the event the chief appraiser failed to address the oil companies' actions that they considered fraudulent. Section 41.03 specifically authorizes taxing units to bring to the appraisal review board challenges to the level of appraisals of any category of property and to an exclusion of property from the appraisal records. Failing a satisfactory result at the appraisal review board, *de novo* judicial review of its decision was available. *See* §§ 42.031, 42.21, 42.23; *Atascosa County*, 990 S.W.2d at 259.[18]

The taxing units elsewhere point to deadlines in Tax Code procedures as indicating the Legislature cannot have intended the appraisal review board to provide a remedy for

---

[16]In so holding, *Beck & Masten* is consistent with the long-cited precept that fraud will negate an otherwise final assessment. *See, e.g., Tex. & Pac. Ry. Co. v. City of El Paso*, 85 S.W.2d 245, 250 (Tex. 1935); *Yamini v. Gentle*, 488 S.W.2d 839, 842 (Tex.Civ.App.–Dallas 1972, writ ref'd n.r.e.).

[17]Granted, the "back-appraisal" of property under section 25.21 is limited to the five years preceding the chief appraiser's action. *See Harris County Appraisal Dist. v. Reynolds/Texas, J.V.*, 884 S.W.2d 526, 529 (Tex.App.–El Paso 1994, no writ). Legislative attention to that section leaves no doubt, though, that the five-year limitation is intentional. By a 1991 amendment to section 25.21, the back-appraisal period was shortened from ten years to five. *See* Act of June 7, 1991, H.B. 507, § 1, 72nd Leg., R.S. 1991 Tex. Gen. Laws 1417.

[18]As an alternative, section 43.01 authorizes a taxing unit to bring suit directly against the appraisal district to compel its compliance with Code provisions, rules of the Comptroller or other applicable law.

-13-

fraud and conspiracy claims such as those they seek to pursue here. They note section 41.04 requires challenge petitions to be filed with the review board within fifteen days after the chief appraiser submits completed appraisal records to the review board, and that sections 41.11 and 41.12 would permit only fifty days to complete the hearing at the review board, obtain the board's order and allow the board to notify the mineral owners of a tax increase. For several reasons, the argument is not persuasive. First, the Tax Code expressly provides for challenges by taxing units, and it contains no indication that challenges based on the appraisal district's failure to deal with tortious conduct by taxpayers are excluded. Secondly, the argument ignores the availability of judicial review, by which a weakness in the outcome of appraisal review board action, whether due to press of time or other causes, may be addressed, *de novo*. Under section 42.23, the district court is to "try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." Thirdly, the argument ignores the express provision in sections 5.08 and 41.65 for the Comptroller's professional and technical assistance to appraisal review boards. Lastly, that the statutory procedures applicable to appraisal review boards might be strained by an adjudication of the magnitude presented by this case[19] does not suggest the Legislature did not intend the procedures to provide a remedy in cases of this nature. The taxing units' argument does not explain how the Tax Code procedures can be adequate to deal with fraud raised in the context of a taxpayer protest

_____

[19]The taxing units' allegations here involve, from the statements in one paragraph of their pleadings, hundreds of thousands of transactions occurring over a ten- to fifteen-year period.

case, *see Beck & Masten*, 830 S.W.2d at 295, but the same procedures are so inadequate as to be inapplicable when the issue is presented by a taxing unit.

## Exclusive Jurisdiction

Our threshold conclusions lead to the question whether the Tax Code's remedies are the exclusive means by which a taxing unit must address claims of fraud and conspiracy occurring in the appraisal process.

The Government Code states that a district court has the jurisdiction provided by article V, section 8 of the Texas Constitution, and further states that the district court "may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code Ann. §§ 24.007-08 (Vernon 2004). Article V, section 8 of the constitution provides district courts with jurisdiction consisting of "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. Our district courts are courts of general jurisdiction, presumably having subject matter jurisdiction unless a contrary showing is made. *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). Consistent with the language of article V, section 8 of the constitution, that contrary showing may be that the

Legislature has provided the claim must be heard elsewhere.[20]  *See In re Entergy Corp.,* 47 Tex. Sup. Ct. J. 729, 731-32 (June 25, 2004); *Dubai Petroleum*,12 S.W.3d at 75.

Relators contend the Legislature has granted the appraisal district and appraisal review board exclusive jurisdiction to address, as an initial matter, the taxing units' claims. Whether an administrative body has been given the sole authority, or exclusive jurisdiction, to make an initial determination in a dispute depends on statutory interpretation.  *See Subaru*, 84 S.W.3d at 221.  When interpreting a statute, we "consider the entire act, its nature and object, and the consequences that would follow from each construction." *Atascosa County*, 990 S.W.2d at 258, quoting *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991).  We must also "reject interpretations of a statute that defeat the purpose of the legislation so long as another reasonable interpretation exists."  *Atascosa County*, 990 S.W.2d at 258, quoting *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).

In support of their contention that the appraisal review board has no jurisdiction over the claims they assert against relators, the taxing units correctly note that in an analysis of a claim of exclusive administrative agency jurisdiction, the administrative body is limited to the powers clearly and expressly given it and courts will not imply additional agency authority.  *See, e.g., Subaru*, 84 S.W.3d at 220.  We have stated our conclusion that the Tax Code provided the taxing units a remedy for the infection of the appraisal process by

[20]Thus, as *Entergy* makes clear, 47 Tex. Sup. Ct. J. at 731-32, the exclusive jurisdiction doctrine is grounded in article V, section 8 of the constitution as well as in traditional administrative law concepts.  *See Cash America Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000).

fraud. We do not consider that conclusion requires us either to imply authority of the appraisal review board to ensure that mineral interests in Yoakum County are appraised based on market value, unreduced by fraud, or to imply authority of taxing units to bring a challenge if necessary to insist that the appraisal review board do so. We find, to the contrary, that the provisions of the Tax Code expressly provide the necessary authority. *See, e.g.*, §§ 6.01, 6.03, 23.01, 25.21; *see also Atascosa County*, 990 S.W.2d at 257 (appraisal review board is "charged with ensuring that property is properly appraised").

The taxing units effectively propose an interpretation of the Tax Code that denies the appraisal review board and taxing units the power to address and remedy, through Code procedures, fraudulent conduct that reduces the appraised value of mineral interests below the statutorily-required market value. Such an interpretation would defeat the Tax Code's purpose. It also would require us to conclude the Legislature has only partially satisfied the constitutional requirement that it provide, by general law, for a single appraisal of property in each county. The Tax Code hardly can be said to meet that requirement if it leaves individual taxing units the duty to correct appraisals based on fraud through suits for damages against property owners.

Recent supreme court opinions considering exclusive jurisdiction issues look for the presence of a "pervasive regulatory scheme" indicating legislative intention that the regulatory process be the "exclusive means of remedying the problem to which the regulation is addressed." *Entergy*, 47 Tex. Sup. Ct. J. at 732; *Subaru*, 84 S.W.3d at 221.[21]

---

[21]Both opinions quote Humphrey, Comment, Antitrust Jurisdiction and Remedies in an Electric Utility Price Squeeze, 52 U. Chi. L. Rev. 1090, 1107 n.3 (1985).

The supreme court has referred to the tax scheme embodied in the Tax Code as comprehensive, *Atascosa County*, 990 S.W.2d at 259, and certainly it is so in scope and detail.[22]  With respect to appraisal, the Code created two new bodies, appraisal districts and appraisal review boards, prescribing their duties,[23] standards[24] and procedures.[25] Without belaboring the point, we find the Tax Code's provisions governing appraisal of properties for ad valorem tax purposes, with its procedures for resolving disputes over valuation, clearly create the type of regulatory scheme discussed in *Entergy* and *Subaru*.

The comprehensive nature of the Tax Code is consistent with the object it serves. As we have noted, through its enactment the Legislature carried out specific constitutional mandates.  *See, e.g.*, Tex. Const. art. VIII, § 18(b) (requiring provision by general law of a single appraisal in each county); *Id.*, § 18(d) (requiring the Legislature to prescribe by general law "methods, timing and administrative process" to implement section's requirements).  The Tax Code does not reflect merely a legislative decision to regulate

---

[22]Tax Code provisions governing appraisal of oil and gas interests are especially detailed.  Section 23.175, added in 1993, prescribes the manner in which the average price of oil or gas is to be calculated for use in an appraisal of oil or gas in place by a method that takes into account the future income anticipated from the sale of oil or gas to be produced.  (The taxing units' pleadings indicate that oil and gas interests in Yoakum County are appraised by such a method.)  That Code section also requires the Comptroller to develop methods and procedures to be used when appraisers discount future income from the sale of oil or gas to present value, and requires appraisal offices to use the methods and procedures specified by the Comptroller.  The Comptroller's manual for that purpose appears at 34 Tex. Admin. Code § 9.4031.

[23]*See, e.g.*, §§ 6.01, 41.01.

[24]*See, e.g.*, §§ 23.01, 41.07, 41.47.

[25]*See, e.g.*, §§ 25.01, *et seq.*, 41.01, *et seq.*

-18-

otherwise private business activity; it constitutes the exercise of the public function of taxation. *See Atascosa County*, 990 S.W.2d at 257, *Wilson;* 713 S.W.2d at 100; *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940) (power to tax belongs to sovereignty; can only be exercised by subordinate corporate body when so delegated by constitution or legislature).

The taxing units contend the Legislature's 2003 addition of section 22.29 to the Tax Code supports their position that the Code is not a "pervasive regulatory scheme" providing administrative remedies that are exclusive with respect to taxing units. *See Cash America Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 17 (Tex. 2000) (recent amendment to statute suggested administrative jurisdiction not intended to be exclusive). Effective January 1, 2004, section 22.29 authorizes the chief appraiser to impose a tax penalty of fifty percent on a taxpayer who commits certain actions, including the filing of a false rendition statement with the intent to commit fraud or evade tax. The taxing units point out that determination of a taxpayer's liability under section 22.29(c) is made by a court, not by the appraisal review board. We do not agree that the addition of section 22.29 supports the taxing units' argument. As relators point out, the specific provision in that section for court determination of liability would be unnecessary if the taxing units were correct that the Tax Code does not preclude common law actions for taxpayer fraud outside the Code procedures.

The Tax Code does not contain language like that in the former Motor Vehicle Commission Code[26] discussed in *Subaru*, 84 S.W.3d at 219, or that in the former Public Utility Regulatory Act[27] discussed in *Entergy*, 47 Tex. Sup. Ct. J. at 732, by which the administrative bodies there involved expressly were given "exclusive original jurisdiction" over matters arising under those statutes. The taxing units point out that the only reference in the Tax Code to the exclusiveness of remedies appears in section 42.09, which declares the prescribed procedures for adjudication of grounds of protest by property owners authorized by the statute to be exclusive and, with two exceptions, prohibits a property owner from raising those grounds in defense to a suit for collection of delinquent taxes or as a basis of a claim for relief in a suit by the property owner. The taxing units note that the section by its wording is applicable only to taxpayer protests and the Code contains no comparable provision expressly providing that taxing units are limited to the remedies provided by the Code.

Other courts have examined the legislative intention behind section 42.09. *See Watson v. Robertson County Appraisal Review Board*, 795 S.W.2d 307, 310 (Tex.App.–Waco 1990, no writ); *Valero Transmission Co. v. Hays Consol. Indep. Sch. Dist.*, 704 S.W.2d 857, 859 n.1, 861-62 (Tex.App.–Austin 1985, writ ref'd n.r.e.). Those opinions describe the efforts of taxpayers under prior law to interpose common law claims and remedies in ad valorem tax cases. *See Watson*, 795 S.W.2d at 310; *Valero*

---

[26]Now codified in Chapter 2301 of the Occupations Code. *See* Tex. Occ. Code Ann. § 2301.151 (Vernon 2004) (providing board with exclusive original jurisdiction).

[27]Now codified in the Utilities Code. *See* Tex. Util. Code Ann. § 32.001 (Vernon 1998) (granting commission exclusive original jurisdiction).

*Transmission*, 704 S.W.2d at 859 n.1, 861-62. *See generally* Yudof, The Property Tax in Texas Under State and Federal Law, 51 Tex. L. Rev., 885, 896 *et seq.* (1973). Given that history, it is not surprising the Legislature would specify that the Code remedies and procedures for taxpayers were being made exclusive. By contrast, there is no history under pre-Code law of local taxing bodies appraising property and assessing taxes through common law causes of action. The absence of a Code provision applicable to taxing units comparable to section 42.09 is not evidence of legislative intent to exempt the claims the taxing units assert in the underlying suit from adjudication through Code procedures.

Our review of the entire Tax Code leads us to conclude it is no less comprehensive with respect to the rights and duties of taxing units than those of property owners, at least with respect to the claims the taxing units assert in the underlying suit. Significantly, for example, the Tax Code contains several provisions indicating the legislative intent that a taxing unit's direct involvement with the appraisal process is limited. Taxing units are expressly prohibited by section 1.15 from directly employing appraisers for the purpose of appraising property for taxation. Section 25.20, though, requires chief appraisers to give a taxing unit's assessor access to appraisal records. While a taxing unit may challenge, under section 41.03(a), the level of appraisals of a category of property, it may not challenge the appraised value of a single taxpayer's property. A 1989 amendment to section 42.031 provides that a taxing unit may not intervene in or otherwise be made a party to an appeal of an order of an appraisal review board determining a taxpayer protest if the appeal is brought by the property owner.

As the supreme court stated in *Entergy*, specific legislative expressions of intent may make a court's exclusive jurisdiction inquiry uncomplicated. 47 Tex. Sup. Ct. J. at 732. Despite the absence from the Tax Code of specific language so providing, the nature of the governmental function exercised through the Tax Code, the constitutional mandates it implements, its comprehensive and detailed provisions concerning appraisal of property, and its provision of remedies combine to require the conclusion that the Legislature intended the Code procedures to be the exclusive means through which the taxing units may seek a remedy for the injuries caused them by the tortious conduct alleged here.

When the Legislature has given exclusive jurisdiction to an administrative body, a litigant's failure to exhaust all administrative remedies before seeking judicial review of the administrative body's action deprives the court of subject matter jurisdiction over claims within the body's exclusive jurisdiction, and the court must dismiss such claims without prejudice. *Subaru*, 84 S.W.3d at 221; *Cash America*, 35 S.W.3d at 15. At the hearing on relators' pleas to the jurisdiction, the Yoakum County Appraisal District chief appraiser testified she had held that position since its creation, and the taxing units had never submitted a challenge to the appraisal roll or filed a suit against the appraisal district. The taxing units have thus failed to exhaust remedies the Legislature has made exclusive under the Tax Code, depriving the trial court of jurisdiction. The trial court's conclusion to the contrary and its denial of relators' pleas to its jurisdiction were a clear error of law and failure to apply the law correctly, thus an abuse of its discretion. *See Walker*, 827 S.W.2d at 840.

**Adequacy of Remedy by Appeal**

Denial of a plea to the jurisdiction traditionally has been treated as an incidental trial court ruling, not reviewable by petition for writ of mandamus when there is an adequate remedy by appeal. *Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955 (Tex. 1990); *Abor v. Black*, 695 S.W.2d 564, 566-67 (Tex. 1985); *see Canadian Helicopters*, 876 S.W.2d at 306. The mere cost to the parties and delay involved in pursuing an appeal do not render an appellate remedy inadequate. *Entergy*, 47 Tex. Sup. Ct. J. at 731; *Canadian Helicopters*, 876 S.W.2d at 306. Our supreme court has issued mandamus, though, when the exercise of jurisdiction by a trial court in the face of exclusive jurisdiction held by an administrative body would work "a clear disruption of the orderly processes of government." *Entergy*, 47 Tex. Sup. Ct. J. at 731, citing *State v. Sewell*, 487 S.W.2d 716, 719 (Tex. 1972). In *Entergy*, electric utility ratepayers brought suit alleging that, by entering into an inconsistent later agreement, the utility had breached an agreement that called for a rate proceeding providing certain rate savings to be filed with the Public Utility Commission. Both the agreement the ratepayers sought to enforce and the later agreement had been approved by the PUC and implemented through PUC orders. Before determining that the Public Utility Regulatory Act gave the PUC exclusive jurisdiction over the dispute between the utility and its ratepayers, the court discussed the issue of the appropriateness of mandamus relief, noting that if the PUC's jurisdiction was exclusive, "permitting a trial to go forward would interfere with the important legislatively mandated function and purpose of the PUC." 47 Tex. Sup. Ct. J. at 731. In short, the court said, if the PUC had exclusive jurisdiction in the dispute, "the judicial appropriation of state agency authority would be a

clear disruption of the 'orderly processes of government.'" *Id*. The court concluded that disruption, coupled with the hardship to the defendant of postponing appellate review of the jurisdictional issue, warranted mandamus relief. We conclude that permitting trial to go forward of a case brought by taxing units, the end of which involves the judicial re-appraisal of mineral properties for ad valorem tax purposes,[28] would constitute no less of an interference with the function and purpose of the appraisal district and appraisal review board.

There is present here another factor that argues in favor of mandamus relief. The record reflects that there are 36 similar cases pending in other district courts of our state, all brought by taxing units and many involving common defendants. Finding that the cases involve common material questions of fact and law, the presiding judges of the administrative judicial regions involved have assigned them to two pretrial judges pursuant to Rule 11 of the Rules of Judicial Administration. Early appellate resolution of the exclusive jurisdiction issue in this case may aid in the adjudication of those cases and thus help minimize the disruption of processes of government.

Taken together, the burden of expense and delay that would result from trial and appeal of the case, the interference with appraisal district and appraisal review board

---

[28]ChevronTexaco Corporation, *et al.* state in a brief filed in this court that the taxing units' suit asserts claims only through the late 1990's. The taxing units' petition in the trial court alleges at one point that the transactions through which relators conducted their fraudulent scheme took place from the mid- to late-1980's through the mid- to late-1990's, but we do not read their pleadings to limit their claims to those arising by that time. Nor do we perceive that the taxing units have in this court characterized their claims as being so limited.

functions and the presence of a number of other cases involving common questions justify the conclusion that appeal is not an adequate remedy for the trial court's error of failing to grant relators' pleas to the jurisdiction.

## Conclusion

We conditionally grant the petition for writ of mandamus, directing the trial court to vacate its order of May 3, 2004, and to dismiss the underlying suit. Confident the trial court will comply with this opinion, only in the event the trial court does not do so will we direct this court's Clerk to issue the writ.

James T. Campbell
Justice

Reavis, J., Concurring

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 26, 2004

_____

NO. 07-04-0285-CV

IN RE EXXONMOBIL CORPORATION, ET AL., RELATORS

_____

NO. 07-04-0286-CV

IN RE CHEVRONTEXACO CORPORATION, ET AL., RELATORS

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**CONCURRING OPINION**

The taxing units allege that the defendant companies engaged in a conspiracy and fraud to fix posted prices for oil. However, because they did not seek relief under sections 15.05(c) and (h) and 15.21 of the Texas Business and Commerce Code Annotated, and without expressing any opinion whether these provisions may provide them a remedy, I concur in the decision of the majority opinion.

Don H. Reavis

Justice