

NUMBER 13-12-00599-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CAMERON APPRAISAL DISTRICT,                                     Appellant,

v.

SEBASTIAN COTTON & GRAIN, LTD.,                                 Appellee.

### On appeal from the 103rd District Court
### of Cameron County, Texas.

# O P I N I O N

### Before Justices Rodriguez, Benavides and Longoria
### Opinion by Justice Benavides

By one issue, appellant Cameron Appraisal District (the Appraisal District) challenges the trial court's judgment reversing the Cameron Appraisal Review Board's order on the determination of ownership of an inventory of yellow-grain sorghum located

at the Port of Harlingen in 2009.[1]    We affirm.

## I.    BACKGROUND

At the time of the Appraisal District's assessment, Sebastian Cotton & Grain, Ltd. (SC&G) faced one-hundred percent tax liability for the above-referenced grain.   In 2010, SC&G's representatives filed a motion and requested a hearing before the Appraisal District to protest and correct the ownership discrepancy of the grain inventory. According to SC&G's motion, at the time of the taxation (January 1, 2009), eighty-six percent of the inventory was owned by DeBruce Grain of Kansas City, Missouri, while the remaining fourteen percent was owned by SC&G.[2]   On March 29, 2010, the Appraisal Review Board determined that SC&G's protest was meritorious and ordered that SC&G's individual tax liability be modified.   The record shows that no appeal was taken of the March 29, 2010 order.

On September 16, 2011, the Appraisal District's chief appraiser, Frutoso Gomez, mailed a letter to SC&G to notify it that Gomez had determined that the ownership of the grain should be corrected on the appraisal rolls to reflect that SC&G owned fourteen percent of the grain inventory and DeBruce Grain owned the remaining eighty-six percent of the inventory.   Gomez relied on section 25.25(b) of the Texas Tax Code as authority.   *See* TEX. TAX CODE ANN. § 25.25(b) (West Supp. 2011).   SC&G again protested to the Appraisal Review Board.

---

[1] The Cameron Appraisal District's property identification number for the property is:   P370921.

[2] To support its motion, SC&G included purchase contracts between DeBruce Grain and Sebastian Cotton and Grain, Ltd., which indicated the dates and amounts of grain purchased.   At trial, SC&G's tax consultant, Jerry Jurica, testified that despite owning only fourteen-percent of the grain, SC&G was holding DeBruce's share of the grain.

On November 18, 2011, the Appraisal Review Board issued an order on SC&G's protest and determined that the ownership of the property as reflected in the 2009 appraisal records was incorrect, and ordered the rolls changed to reflect the following:

| Owner | Percentage Owned | Value |
|---|---|---|
| [SC&G] | 79.1766 undivided | $1,875,731 |
| [DeBruce Grain] | 20.8234 undivided | $493,316 |

As a result of the November 18, 2011 Appraisal Review Board's decision, SC&G owed a greater amount in property taxes for the 2009 tax year. Accordingly, SC&G filed a petition for review of the Appraisal Review Board's order to the trial court. *See id.* §§ 42.21–.22 (West 2008).

After a bench trial, the trial court found in favor of SC&G, and ordered that the Appraisal District's September 16, 2011 action and the Appraisal Review Board's November 18, 2011 order were null and void because both constituted "an impermissible collateral attack" on the Appraisal Review Board's March 29, 2010 order. This appeal ensued.

## II. ANALYSIS

By its sole issue, the Appraisal District asks this Court to determine whether its action on September 16, 2011 pursuant to section 25.25(b) of the tax code, *see id.* § 25.25(b), was null and void because it constituted an impermissible collateral attack on the Appraisal Review Board's March 29, 2010 order.

### A. Standard of Review

Statutory construction is a legal question that we review de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Valley Baptist*

3

*Med. Ctr. v. Morales*, 295 S.W.3d 408, 410 (Tex. App.—Corpus Christi 2009, no pet.). When construing a statute, we begin with its language. *State, Tex. Parks & Wildlife Dep't v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective is to ascertain the Legislature's intent as expressed by the language of the statute. *Id.* (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) (citing TEX. GOV'T CODE ANN. § 311.011(b) (West 2005)). Otherwise, we construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, *see Taylor v. Fireman's and Policeman's Civil Serv. Comm'n of City of Lubbock*, 616 S.W.2d 187, 189 (Tex. 1981), or such a construction leads to absurd results. *Tex. Dep't of Protective and Reg. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004); *see Hughes,* 246 S.W.3d at 625–26. We presume that the legislature intended a just and reasonable result by enacting the statute. *See* TEX. GOV'T CODE ANN. § 311.021 (West 2005); *Hughes*, 246 S.W.3d at 626. When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe its language. *See Hughes*, 246 S.W.3d at 626; *Shumake*, 199 S.W.3d at 284.

### B. Discussion

### 1. Property Tax Code

The relevant portions of the statute at issue provide for the following:

(a) *Except as provided by Chapters 41 and 42* of this code and by this section, the appraisal roll may not be changed.

4

(b) The chief appraiser may change the appraisal roll *at any time* to correct a name or address, *a determination of ownership*, a description of property, multiple appraisals of a property, or a clerical error or other inaccuracy as prescribed by board rule *that does not increase the amount of tax liability.* Before the 10th day after the end of each calendar quarter, the chief appraiser shall submit to the appraisal review board and to the board of directors of the appraisal district a written report of each change made under this subsection that decreases the tax liability of the owner of the property. The report must include:

(1) a description of each property; and

(2) the name of the owner of that property.

TEX. TAX CODE ANN. § 25.25(a)–(b) (emphasis added).

A plain reading of section 25.25 authorizes an appraisal district's chief appraiser to change an appraisal roll for, among others, the determination of ownership of taxable property. *See id.* § 25.25(b). However, the statute limits the chief appraiser's power to make those changes; changes may be made so long as they do not (a) increase the amount of tax liability, *see id.*; or (b) interfere with chapters 41 and 42 of the tax code. *See id.* § 25.25(a) ("Except as provided by Chapters 41 and 42 of this code and by this section . . . ."); *see also City of San Antonio,* 111 S.W.3d at 25 ("We determine legislative intent from the entire act and not just its isolated portions.").

Chapter 41, in particular, discusses the role and powers of an Appraisal Review Board, *see* TEX. TAX CODE ANN. §§ 41.61–.71 (West 2008), including the duties to determine protests by property owners and challenges initiated by taxing units, as well as the duties to act on motions to correct appraisal rolls under section 25.25. *See id.* § 41.01(a) (West 2008). The chapter also lays out the rights of a taxpayer to protest

5

before an appraisal review board. *See id.* §§ 41.41–.47 (West Supp. 2011).

Chapter 42 involves, *inter alia*, rights to petition for judicial review of decisions made by an appraisal review board, including protests brought under chapter 41 and determinations by the appraisal review board of a motion filed under section 25.25. *See id.* § 42.01(a) (West Supp. 2011). The chapter also provides for the remedies available to successful property-owner petitioners, *see id.* § 42.24 (West 2008), and the process to correct appraisal rolls. *See id.* § 42.41 (West 2008).

We observe and resolve from our reading of the relevant statutes that section 25.25 is so interwoven and integrated with chapters 41 and 42, that we must read them together to harmonize the scheme and ascertain the Legislature's intent behind the property tax code. *See Rodriguez v. Tex. Workforce Comm'n*, 986 S.W.2d 781, 783 (Tex. App.—Corpus Christi 1999, pet. denied) ("Where possible, courts are to construe language used in statutes so as to harmonize all relevant laws, not create conflict."); *see, e.g.,* TEX. TAX CODE ANN. §§ 41.01(a)(4) (enabling the appraisal review board to act on motions to correct appraisal rolls under 25.25); 42.01(a)(1)(B) (enabling a property owner to file a petition for judicial review regarding the determination of an appraisal review board on a motion filed under section 25.25). Additionally, chapters 41 and 42 discuss the relationship between the chief appraisal officer and the appraisal review boards, including corrections of records. *See, e.g.,* TEX. TAX CODE ANN. §§ 41.08 (West Supp. 2011) ("The chief appraiser shall make the reappraisals or other corrections of the appraisal records ordered by the appraisal review board"); 41.41 (West 2008) ("A property owner is entitled to protest before the appraisal review board for any action of

6

the chief appraiser); 42.41 (West 2008) (directing the chief appraiser to correct appraisal rolls after a property owner's successful appeal to the district court).

### 2. Analysis

With this general statutory construction in mind, we turn to the specific facts of this case.   On March 29, 2010, the Appraisal Review Board determined that SC&G's protest of ownership was meritorious and ordered that SC&G's tax liability be modified.   This decision in SC&G's favor was final and appealable by the Appraisal District subject to the procedures outlined in chapter 42 of the tax code.   *See id.* § 42.02(a) (West 2008) (giving the chief appraiser authority, with board approval, to appeal an appraisal review board's adverse ruling).   It is undisputed that the Appraisal District chose not to appeal the Appraisal Review Board's March 29, 2010 order.   However, on September 16, 2011, the Appraisal District's chief appraiser then reversed the Appraisal Review Board order and changed the ownership of the property back to SC&G under the chief appraiser's presumed authority of section 25.25(b).   *See id.* § 25.25(b).   SC&G argues that this action effectively changed SC&G's tax liability for the 2009 tax year.[3]

The Appraisal District's intention to ignore the Appraisal Review Board's March 29, 2010 order was made clear to the trial court as illustrated by the following colloquy with the Appraisal District's chief appraiser, Gomez:

> [SC&G Counsel]:          You had issued a 25.25(b) motion to correct ownership of the property; correct?
>
> Gomez:                         That is correct, yes.

---

[3] We note that the issue of whether the Appraisal District's September 16, 2011 order increased the tax liability pursuant to section 25.25(b) is not dispositive of this appeal.   *See* TEX. R. APP. P. 47.1.

7

[SC&G Counsel]: To correct the appraisal review board's decision in the first formal hearing to correct ownership?

Gomez: That is correct.

In light of this testimony, we conclude that the chief appraiser's actions on September 16, 2011 amounted to a prohibited collateral attack against the Appraisal Review Board's March 29, 2010 order. *See also Travis Cent. Appraisal Dist. v. Marshall Ford Marina, Inc.*, No. 03-05-00784-CV, 2009 WL 2900743 (Tex. App.—Austin Sept. 9, 2009, no pet.) (mem. op.) (concluding that the appraisal district pursued an impermissible collateral attack upon a previous appraisal review board's orders). The tax code provides for detailed administrative procedures for appeals that are exclusive, and most defenses are barred if not raised therein. *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006). Failure to appeal an appraisal review board proceeding deprives the court of jurisdiction to decide most matters relating to ad valorem taxes. *Id.*

The Appraisal District asserts that section 25.25(b) gives its chief appraiser the "complete" and "unilateral" authority to correct issues of ownership of taxable property, so long as the change or correction does not increase the amount of tax liability, and that the authority may be exercised regardless of whether ownership may have previously been determined by the appraisal review board. To construe section 25.25(b) as broadly as the Appraisal District's asks this Court to do today would effectively give the Appraisal District the power to circumvent, bypass, and ignore, at the chief appraiser's discretion, the detailed due process procedures and jurisdictional principles articulated in section 25.25 and chapters 41 and 42. Such a broad reading of the tax code and its remedies

8

would lead to an absurd result that is not just and reasonable. *See* TEX. GOV'T CODE ANN. § 311.021; *Hughes,* 246 S.W.3d at 625–26. Accordingly, we decline to adopt the Appraisal District's position.

The Appraisal District also argues that the reason for the chief appraiser's actions on September 16, 2011 was due to the SC&G's "false testimony" to the Appraisal Review Board during its hearing in March 2010. No evidence is before this Court on that contention, and as such, we decline to address it. We note, however, that such an argument could have been raised and developed properly in a timely petition for judicial review brought by the Appraisal District following the Appraisal Review Board's March 29, 2010's order. *See* TEX. TAX CODE ANN. § 42.02(a).

Accordingly, we conclude that: (1) section 25.25 should be read and construed in conjunction with chapters 41 and 42 of the tax code; (2) section 25.25(b) does not give the Appraisal District a "complete" and "unilateral" authority to correct issues of ownership, regardless of whether ownership was determined by the Appraisal Review Board; and (3) the Appraisal District actions on September 16, 2011 amounted to a prohibited collateral attack against the Appraisal Review Board's March 29, 2010 order. The Appraisal District's sole issue is overruled.

### III.    CONCLUSION

The trial court's judgment is affirmed.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
8th day of August, 2013.

9