**SEBASTIAN COTTON & GRAIN, LTD., Appellant,**

**v.**

**WILLACY COUNTY APPRAISAL DISTRICT, Appellee.**

**NUMBER 13–14–00574–CV**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Delivered April 28, 2016.

Reconsideration En Banc Overruled June 24, 2016

Judith A. Hargrove, Hargrove & Evans, LLP, Austin, TX, for Willacy County Appraisal District.

Thomas M. Michel, Attorney at Law, Fort Worth, TX, for Sebastian Cotton & Grain.

Before Justices Rodriguez, Garza, and Longoria Opinion by Justice Rodriguez

## OPINION

### NELDA V. RODRIGUEZ, Justice

This suit concerns tax liability for a sizeable quantity of grain. Appellant Sebastian Cotton & Grain, Ltd. (Sebastian) contends that the grain was owned by De-Bruce Grain, Inc. (DeBruce), which should therefore be liable for taxes on the grain. Appellee, the Willacy County Appraisal District (WCAD or District), contends that Sebastian was the majority owner. The administrative tribunal—a tax authority known as the Willacy County Appraisal Review Board (Appraisal Board)—agreed with WCAD and found that Sebastian owned and was liable for taxes on the majority of the grain. After a trial de novo, the district court also found Sebastian liable for taxes on the majority of the grain.

Sebastian notes that prior to the Appraisal Board's order, Sebastian entered into a binding agreement with WCAD pursuant to section 1.111(e) of the Texas Tax Code (the Agreement). *See* TEX. TAX CODE ANN. § 1.111(e) (West, Westlaw through 2015 R.S.). The Agreement states that Sebastian had no tax liability for the grain in question. Sebastian contends that this Agreement was final and could not be rescinded by WCAD or overruled by the Appraisal Board or the district court for various reasons. However, the district court found that Sebastian had committed fraud by inaccurately reporting its property to WCAD for appraisal. The court concluded that this fraud allowed WCAD to void the Agreement. By five issues which we construe as four, Sebastian asserts that the district court erred. Sebastian first argues that WCAD failed to bring fraud to the attention of the Appraisal Board and therefore failed to exhaust its administrative remedies, destroying jurisdiction to hear that issue on appeal. Sebastian next argues that even if fraud would otherwise give WCAD the power to rescind the Agreement, WCAD and the Appraisal Board pursued an incorrect procedure for applying that power, rendering the orders of the Appraisal Board and the district court void. Third, Sebastian argues that there was no evidence of fraud. Finally, Sebastian contends that it must be awarded attorney's fees. We reverse and render in part and reverse and remand in part.

## I. BACKGROUND

In 2009, Sebastian engaged a licensed tax agent named Jerry Jurica to assist with its tax forms for the year. With Jurica's assistance, Sebastian filed property tax forms with WCAD, which was responsible for appraising Sebastian's property for tax purposes.[1] Sebastian claimed on its forms that all of the grain then in Sebastian's possession was the company's property. However, Jurica testified at trial that Sebastian did not believe it owned all of the grain and that reporting ownership of the grain was an error resulting from either miscommunication or miscalculation.

---

1. Other appraisal districts were also responsible for appraising Sebastian's taxable property. These districts are not parties to the present suit. However, this Court has addressed an appeal from related litigation between Sebastian and the Cameron County Appraisal District, wherein the contested ownership of grain was also at issue. *See Cameron Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 443 S.W.3d 212, 213 (Tex.App.–Corpus Christi 2013, no pet.). *Cameron Appraisal* concerned different facts and issues, and the case does not control our result here.

Jurica testified that when Sebastian learned it was being found liable for taxes on all the grain, the company was surprised and contacted him to investigate the matter. Sebastian explained that it did not own the grain, and Sebastian gave him copies of four purchase contracts concerning the grain. According to Sebastian, the contracts showed that 86% of the grain had been purchased and was owned by DeBruce, which Sebastian contended should be liable for taxes on the grain. Jurica testified that he contacted DeBruce to confirm the validity of the contracts and to explain that he was pursuing the tax protest on behalf of Sebastian. According to Jurica, he explained to DeBruce's representative that the motion to correct ownership, if granted, could result in an increase of DeBruce's tax liability. DeBruce's representative confirmed that the company had purchased the grain and did not express resistance to Jurica's efforts to alter the appraisal records, though the representative told Jurica that DeBruce did not believe it had tax liability on any grain in Texas.[2]

Having confirmed the general validity of the contracts, Jurica then contacted WCAD's chief appraiser. Jurica produced the contracts and explained Sebastian's situation. The chief appraiser agreed on behalf of WCAD that Sebastian should have only been taxed for $1,149,942 of property rather than the $3,141,611 that was originally appraised as Sebastian's property. The Agreement was entered pursuant to Texas Tax Code section 1.111(e). See TEX. TAX CODE ANN. § 1.111(e). WCAD certified the change, allowed Sebastian a refund, and then shifted tax liability on

$1,991,669 of grain to DeBruce, which the chief appraiser believed to be the owner.

DeBruce protested. It acknowledged the four purchase contracts, but directed the chief appraiser's attention to the trade rules of the National Grain and Feed Association (NGFA). DeBruce contended that the NGFA rules governed the contracts. The NGFA rules provided that legal title to the grain did not pass to the purchaser until the grain was actually delivered to the purchaser. DeBruce pointed to evidence that, on the critical date of tax assessment, most of the $1,991,669 of grain in question had not been delivered to DeBruce. Instead, the majority remained in Sebastian's possession. Thus, legal title to the majority of the grain was held by Sebastian according to NGFA rules. The chief appraiser was thus once again convinced that Sebastian was liable for taxes on the majority of the grain.

The chief appraiser sent notice pursuant to Texas Tax Code section 25.25(b) that he intended to once again change the determination of ownership, shifting a large part of the grain-liability back to Sebastian. See TEX. TAX CODE ANN. § 25.25(b) (West, Westlaw through 2015 R.S.) Both Sebastian and DeBruce protested.[3] The Appraisal Board heard the protests and determined that Sebastian owned 69.7% of the $1,991,669 of grain which had previously been shifted to DeBruce, which amounted to $1,390,064 of taxable value. The Appraisal Board expressly relied upon section 25.25(b) as authority to issue the order. See id.

In 2012, Sebastian filed an appeal for a trial de novo in the district court. Sebastian pleaded, among other things, that sec-

---

**2.** Jurica's testimony on this point was the subject of a hearsay objection that the district court overruled. On appeal, the parties do not contest the validity of the court's decision to admit this testimony.

**3.** The reason for DeBruce's protest is not apparent from the record.

tion 25.25(b) did not grant WCAD or the Appraisal Board authority to override the Agreement and increase Sebastian's individual liability. In its answer, WCAD generally denied Sebastian's claims and specially denied Sebastian's allegations concerning section 25.25(b) authority. In August 2013, WCAD amended its answer to plead, for the first time, that Sebastian had committed fraud in procuring the Agreement. WCAD pleaded that the Agreement was voidable because of the fraud.

The district court conducted a bench trial, at which it heard evidence from Sebastian's then-owner Tommy Funk and Sebastian's tax agent Jerry Jurica. The trial court also received testimony from WCAD's chief appraiser. The district court upheld WCAD's determination that Sebastian was liable for 69.7% of the $1,991,669 of grain and entered findings of fact. Sebastian appeals the trial court's judgment.

## II. JURISDICTION & EXHAUSTION OF ADMINISTRATIVE REMEDIES

By its first issue, Sebastian contests whether the issue of fraud was properly before the trial court. Sebastian notes that the district court relied upon fraud as a basis for its judgment in favor of WCAD. However, WCAD did not bring its theory of fraud to the attention of the Appraisal Board and only raised fraud in the district court. Sebastian contends that this qualifies as a failure to exhaust administrative remedies. Therefore, Sebastian reasons, this fraud theory was effectively waived and could not serve as a valid basis for the trial court to render judgment.

Sebastian is hybridizing the problems of issue preservation (i.e., that an appealing party must bring an argument to the attention of the trial court in order for an appellate court to later consider it) and exhaustion of administrative remedies (i.e., a party must file and go through an administrative determination on their claim before filing suit in district court). However, this is not how a failure to exhaust administrative remedies ordinarily works: rather than simply waiving a specific issue or argument, a party's failure to exhaust administrative remedies will ordinarily operate as a jurisdictional bar to pursuing an entire claim in any later suit. See Subaru of America, Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex.2002); In re ExxonMobil Corp., 153 S.W.3d 605, 618 (Tex.App.–Amarillo 2004, no pet.). This is contrasted with issue preservation, which does not necessarily strip away the power to review entire claims, but may be more surgical, allowing a court to generally review a claim but decline to review a particular issue concerning that claim—or even one precise argument within an issue. See, e.g., Nguyen v. Myers, 442 S.W.3d 434, 440–41 (Tex.App.–Dallas 2013, no pet.) (addressing the merits of one contention within the appellate issue of an attorney's improper jury argument, but declining to address another contention because it had not been preserved). It would be strange to modify the concept of jurisdiction so that it mirrors issue preservation only in this one unique context.

Many of our sister courts have followed this hybrid approach in addressing appeals to a trial de novo from an administrative ruling. See Harris Cnty. Appraisal Dist. v. ETC Mktg., Ltd., 399 S.W.3d 364, 369 (Tex.App.–Houston [14th Dist.] 2013, pet. denied); Midland Cent. Appraisal Dist. v. Plains Mktg., LP, 202 S.W.3d 469, 475–76 (Tex.App.–Eastland 2006, pet. denied); Quorum Int'l v. Tarrant Appraisal Dist., 114 S.W.3d 568, 573 (Tex.App.–Fort Worth 2003, pet. denied). These courts have held that a party's failure to raise an argument

before an appraisal review board will deprive the district court of jurisdiction to hear *that argument* in a trial de novo.

While we respect these courts' reasoning and desire for precise argument at all levels of the case, we decline to adopt this approach. We do not believe that the burden of issue preservation should start at the level of the appraisal board.

We are guided by the reasoning of the Texarkana Court of Appeals, which adopted the principle we follow today as a general rule. *See Lamar Cnty. Appraisal Dist. v. Campbell Soup Co.*, 93 S.W.3d 642, 645 (Tex.App.–Texarkana 2002, no pet.). Under the tax code, an appeal of an appraisal review board order leads to a trial de novo in the district court. Tex. Tax Code Ann. § 42.23(a) (West, Westlaw through 2015 R.S.). The *Campbell Soup* court recognized that a " 'trial de novo' is generally defined as a new trial on the entire case, on both questions of fact and issues of law, conducted as if there had been no trial in the first instance." 93 S.W.3d at 645 (quoting Black's Law Dictionary 1512 (7th ed.1999)). The court recognized that "[a]s a general rule, a trial de novo cures all procedural defects in the proceedings below." *Id.*; *see Estate of Smith v. Ector Cnty. Appraisal Dist.*, 480 S.W.3d 796, 800 (Tex.App.–Eastland 2015, pet. filed) (same). The Texarkana court only departed from this general rule because the procedural default in question was a complete failure of an appraisal review board to give a required notice to the taxpayer, which unlike most forms of procedural default could not be cured by a

trial de novo. *See Campbell Soup*, 93 S.W.3d at 646 (citing *Harris Cnty. Appraisal Review Bd. v. Gen. Elec. Corp.*, 819 S.W.2d 915, 920 (Tex.App.–Houston [14th Dist.] 1991, writ denied); *Garza v. Block Distrib. Co.*, 696 S.W.2d 259, 262 (Tex.App.–San Antonio 1985, no writ)).[4]

■ In a comparable tax case, the Texas Supreme Court also reached a similar conclusion as we reach today. *See Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 801 S.W.2d 872, 877 (Tex.1990). There, the supreme court held that an appraisal district was not bound by the issue-specific flaws in the case's procedural history stemming from the administrative proceeding. See *id.* The opinion reasoned the tax code requires the district court to conduct a trial de novo in which it considers "all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." *Id.*; *see* Tex. Tax Code Ann. § 42.23(a); *see also In re ExxonMobil*, 153 S.W.3d at 614. Here, it is undisputed that fraud was raised by the pleadings in the district court. Finally, the *Cherokee Water* court pointed out that the appraisal review board's hearing and order are generally not admissible at the trial de novo. 801 S.W.2d at 877; *see* Tex. Tax Code Ann. § 42.23(b). Applying issue preservation to an appraisal board hearing would not only require such evidence to be admitted in the trial court, but would hold this evidence to be determinative in such proceedings. See *Bd. of Appraisal Review for Travis Cnty. Appraisal Dist. v. Protestant Episcopal Church Council of Diocese of Tex.*, 676 S.W.2d 616, 623 (Tex.App.–

---

4. We read *Campbell Soup* to say that a trial de novo's curative powers do not reach those forms of procedural default which would, in themselves, destroy jurisdiction—unlike issue preservation. *See Lamar Cnty. Appraisal Dist. v. Campbell Soup Co.*, 93 S.W.3d 642, 645 (Tex.App.–Texarkana 2002, no pet.). This approach comports with our past decisions.

*See, e.g., Found. of Hope, Inc. v. San Patricio Cnty. Appraisal Dist.*, No. 13–02–083–CV, 2003 WL 22097779, at *3 (Tex.App.–Corpus Christi Sept. 11, 2003, no pet.) (mem.op.) (dismissing case where the appellant had failed to timely protest the order of a tax authority, which in itself destroyed the jurisdiction of the administrative tribunal).

Austin 1984, writ dism'd) (rejecting deference to appraisal board's order because statute required review by trial de novo, wherein board's decision was not admissible).

Likewise, our approach comports with the Texas Supreme Court's general view of a trial de novo. The court has reviewed language similar to tax code section 42.23 and concluded:

> The trial court's function in a condemnation proceeding is "appellate" in the sense that the case is first considered by the special commissioners, and hence ... the court's jurisdiction "is appellate as distinguished from original or concurrent." *The court's jurisdiction Is not, however, "appellate" In the sense that the evidence Is, fixed In the record of the proceedings below and the court. is confined to that paper record, as ordinarily occurs when an appellate court reviews a case.* Quite the opposite, the statutory scheme makes no provision for the commissioners' hearing to be recorded, and provides that "[i]f a party files an objection to the findings of the special commissioners, the court shall cite the adverse party and try the case in the same manner as other civil causes." In other words, *the proceedings that occurred before the special commissioners are not considered,* and the case is tried to the court de novo. There is no option typically available to an appellate tribunal to simply affirm the special commissioners' award.... We agree with TxDOT that it is incongruous to label the trial court as appellate in the ordinary sense "given that its function is not to review and correct, but to determine the value of the property anew."

A trial de novo, conducted "in the same manner as other civil causes," *is not confined to the same evidence* that was presented at the administrative phase. By analogy, the statute governing judicial review of final decisions of state agencies provides that if judicial review is by trial de novo, "the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision," and generally may not even "admit in evidence the fact of prior state agency action."

*PR Invs. & Specialty Retailers, Inc. v. State,* 251 S.W.3d 472, 476 (Tex.2008) (emphasis added) (citations omitted) (discussing Texas Property Code section 21.018). Just as *PR Investments* approved of new evidence at a trial de novo, we do not believe that district courts are prohibited from hearing new arguments as a quasi-appellate court. *See id.* Here, the trial de novo was based on arguments and evidence that were introduced afresh by the parties, not the arguments and evidence contained in a static record.[5]

Our district courts are courts of general jurisdiction, presumably having subject matter jurisdiction to hear all of these arguments unless a contrary showing is made. *Subaru of America,* 84 S.W.3d at 220. Sebastian has not made any contrary showing in this case. If, instead, issue preservation began at the level of the administrative tribunal, it would undercut "the availability of judicial review, by which a weakness in the outcome of appraisal review board action, whether due to press of time or other causes, may be addressed, de novo." *See In re ExxonMobil,* 153 S.W.3d at 614. The "press of

---

**5.** To the limited extent that a trial de novo is appellate in nature, we note that courts of appeal "should reach the merits of an appeal whenever reasonably possible." *Perry v. Cohen,* 272 S.W.3d 585, 587 (Tex.2008).

time" may be especially acute in appraisal board proceedings, wherein an appraisal district may have as few as fifteen days to bring a problem to an appraisal review board's attention before the appraisal records are finalized, and the taxpayer faces similar time constraints. *See* TEX. TAX CODE ANN. §§ 41.04, .44 (West, Westlaw through 2015 R.S.).

We conclude that WCAD's failure to raise the issue of fraud in the Appraisal Board proceedings does not show that WCAD failed to exhaust its administrative remedies. We overrule Sebastian's first issue.

## III. STATUTORY AUTHORITY

By its second issue, Sebastian contends that section 25.25(b) did not authorize WCAD to increase Sebastian's tax liability in the manner that it did, even in light of any fraud. *See* TEX. TAX CODE ANN. § 25.25(b). Sebastian argues that because the Appraisal Board exceeded its statutory authority under section 25.25(b), its action was therefore null and void.

We reproduce section 25.25(b) here, with the most pertinent portions emphasized:

(b) *The chief appraiser may change the appraisal roll at any time to correct* a name or address, a *determination of ownership*, a description of property, multiple appraisals of a property, or a clerical error or other inaccuracy as prescribed by board rule *that does not increase the amount of tax liability.* Before the 10th day after the end of each calendar quarter, the chief appraiser shall submit to the appraisal review board and to the board of directors of the appraisal district a written report of each change made under this subsection *that decreases the tax liability of the owner of the property.* The report must include:

(1) a description of each property; and

(2) the name of the owner of that property.

*Id.* (emphasis added). WCAD contends that this section empowers the District to change the appraisal roll at any time to correct a determination of ownership so long as the change "does not increase the amount of [net] tax liability"—i.e., the amount of tax liability owed by all taxpayers on the property. For example, if WCAD shifted $1,000,000 of tax liability from party A to party B, this would be permissible under WCAD's interpretation because the total amount of net tax liability has not increased on the property itself among all taxpayers. And because the statute expressly states that the chief appraiser may enter such a change "at any time," under WCAD's interpretation, the chief appraiser could enter such a change in 2060 just as easily as it could in 2010. *See id.*

Sebastian contends that "liability" under this section refers to a property-owner's individual liability, not net tax liability as WCAD contends. Sebastian points to the second sentence, which refers to a change "that decreases the tax liability of the owner of the property." *Id.* (emphasis added). Sebastian contends that the first and second sentences must be read in conjunction: given the second sentence's clear reference to individualized tax liability, we should be more inclined to read the first sentence as allowing only a correction that "does not increase the amount of [an individual owner's] liability."

To bring resolution to the parties' dispute, we must construe the relevant provisions of the tax code. Statutory construction is a legal question that we review de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex.2010). In construing the statute, our

objective is to determine and give effect to the legislature's intent. *Tex. Parks & Wildlife Dep't v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We use definitions prescribed by the legislature and any technical or particular meaning the words have acquired. TEX. GOV'T CODE ANN. § 311.011(b) (West, Westlaw through 2015 R.S.); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We presume that the legislature intended a just and reasonable result by enacting the statute. TEX. GOV'T CODE ANN. § 311.021 (West, Westlaw through 2015 R.S.); *Hughes*, 246 S.W.3d at 626.

We determine legislative intent from the entire act and not just its isolated portions. *City of San Antonio*, 111 S.W.3d at 25; *Cameron Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 443 S.W.3d 212, 215 (Tex.App.–Corpus Christi 2013, no pet.). Thus, we "read the statute as a whole and interpret it to give effect to every part." *City of San Antonio*, 111 S.W.3d at 25; *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We determined in *Cameron Appraisal District* that chapter 25 of the Texas Property Tax Code must be read in conjunction with chapters 41 and 42 of the same. See 443 S.W.3d at 215; *see also Collin Cnty. Appraisal Dist. v. Ne. Dallas Assocs.*, 855 S.W.2d 843, 848 (Tex.App.–Dallas 1993, no writ). As we explain below, this conjunctive reading leads us to agree with Sebastian's interpretation of section 25.25(b).

Chapters 25, 41, and 42 provide a framework for resolving discrepancies in and disputes about appraisal information. *See In re ExxonMobil*, 153 S.W.3d at 612. The decision-making process differs depending on whether the appraisal information has been finalized by the approval of the appraisal review board. Before finalization, the information is known as the "appraisal record." *See* TEX. TAX CODE ANN. § 25.24 (West, Westlaw through 2015 R.S.). After finalization, the preliminary appraisal record becomes the final "appraisal roll." *Id.*

The taxing unit has various options to pursue a change of the appraisal record before it is finalized. When an appraisal district notices a discrepancy in the records, and correction of the discrepancy would not increase a taxpayer's individual liability, the district may use the following procedure:

> At any time before approval of the appraisal records as provided by Section 41.12 of this code, the chief appraiser may submit written recommendations to the appraisal review board for corrections in the records. If the board approves a recommended correction and *it will not result in an increase in the tax liability of a property owner*, the board may make the correction by written order.

*Id.* at § 41.10 (West, Westlaw through 2015 R.S.) (emphasis added). This section parallels 25.25(b). The two sections use similar language, except that 41.10 clearly states that a chief appraiser may not use that provision to increase an owner's individual liability. Both sections prescribe a relatively simple procedure for changing appraisal information: unilateral or nearly unilateral action by the chief appraiser. Neither provision mentions that the taxpayer has a right to protest or a hearing. *See W. Athletic Clubs, Inc. v. Harris Cnty. Appraisal Dist.*, 56 S.W.3d 269, 273–74 (Tex.App.–Amarillo 2001, no pet.).

However, when an appraisal district seeks an alteration that would increase the liability of the taxpayer, different sections control, and the procedure is more involved. The appraisal district must ordinarily file a "challenge petition" "before June 1 or within 15 days after the date

that the appraisal records are submitted to the appraisal review board, whichever is later." TEX. TAX CODE ANN. at § 41.04 (West, Westlaw through 2015 R.S.). The appraisal district is entitled to a hearing on any timely-filed challenge. *See id.* §§ 41.04–05 (West, Westlaw through 2015 R.S.). If, as a result of the challenge, the appraisal review board enters an order that "will result in an increase in the tax liability *of the property owner,*" the secretary of the board must deliver a formal notice to the taxpayer. *Id.* § 41.11 (West, Westlaw through 2015 R.S.) (emphasis added). The taxpayer has a right to protest the board's decision within thirty days of receiving the notice or by June 1 (whichever is later) if the property is personal property. *See id.* §§ 41.11, .44.

Chapter 41 provides another avenue for tax authorities to alter the appraisal record: a *sua sponte* correction by an appraisal board. Before the appraisal record is finalized, an appraisal review board may correct discrepancies as follows:

> At any time before approval of the appraisal records as provided by Section 41.12 of this code, the appraisal review board in writing may correct a clerical error in the records without referring the matter to the appraisal office if the correction will not affect the *tax liability of a property owner* and if the chief appraiser does not object in writing.

*Id.* § 41.09 (West, Westlaw through 2015 R.S.) (emphasis added).

■ When read together, these sections show three general traits that lead us to agree with Sebastian's interpretation and disagree with WCAD's. First, each of these sections speaks of "liability" only in terms of how the individual taxpayer's liability is affected, not in terms of the net effect on all taxpayers or on the property, as WCAD urges. *See id.* §§ 41.09–.11. "When an undefined term has multiple common meanings, we apply the definition that is most consistent with its use in the context of the statute." *Beeman v. Livingston,* 468 S.W.3d 534, 539 (Tex.2015); *see State v. $1,760.00 in U.S. Currency,* 406 S.W.3d 177, 180–81 (Tex.2013). "In other words, we give an undefined statutory term the meaning that is in harmony with and is consistent with relevant provisions of the statute." *Beeman,* 468 S.W.3d at 539. "And when a word is used throughout a statute, we generally construe the statute to provide consistent meaning to that word." *Id.*; *see City of Lorena v. BMTP Holdings, LP,* 409 S.W.3d 634, 643 (Tex.2013). Here, the statute's consistent usage of the term "liability" to refer to individual obligations suggests that section 25.25(b) bars the chief appraiser from increasing an individual's liability by determining that they are the owner of the property after the appraisal roll has been finalized. *See* TEX. TAX CODE ANN. § 25.25(b). The second sentence of 25.25(b) reinforces this conclusion because it refers only to decreasing individual liability: it requires that the chief appraiser submit a written report of each change made under this subsection "that decreases the tax liability of the owner of the property." *See id.* If 25.25(b) did in fact allow increases in individual liability, it would be no less important for the chief appraiser to report increases in individual liability to the appraisal board—yet only reports of decreases are required. *See id.*

Moreover, section 25.25(n) provides a means of issuing refunds as a result of certain decisions under 25.25(b). *See id.* § 25.25(b), (n). Section 25.25(n)'s refund mechanism was added by the same legislative enactment that gave the chief appraiser the power to correct ownership under 25.25(b). *See* "Administration and Collection of Ad Valorem Taxes," Act of June 17,

2001, 77th Leg., R.S., ch. 1430, § 6, 2001 Tex. Sess. Law Serv. Ch. 1430 (H.B.490) (Vernon's). It should be noted that this refund mechanism addresses other forms of changes besides changes in ownership. *See* TEX. TAX CODE ANN. § 25.25(b), (n). Nonetheless, the fact that this refund mechanism—but no additional taxation mechanism—specifically relates to 25.25(b) and was enacted at the same time as the amendment to 25.25(b) is at least somewhat indicative of legislative intent.

Second, the sections show that when a taxpayer's individual liability is increased, the taxpayer will generally have "detailed due process" rights to a protest and hearing. See *id.* § 41.11; *Cameron Appraisal Dist.*, 443 S.W.3d at 216. However, when the taxpayer does not face an increase in individual liability, no protest or hearing is necessarily available. *See* TEX. TAX CODE ANN. §§ 41.09–10. This tends to support Sebastian's interpretation: if 25.25(b) could be used to increase a taxpayer's individual liability, then in all likelihood that section would have included a means for the taxpayer to protest any adverse decision, as in section 41.11. However, a taxpayer does not have the right to a protest and hearing under 25.25(b).[6] *W. Athletic Clubs, Inc.*, 56 S.W.3d at 274.

By contrast, before the appraisal record has been finalized, the taxpayer has the right to protest a determination of ownership. *See* TEX. TAX CODE ANN. § 41.41 (West, Westlaw through 2015 R.S.). It makes little sense to interpret 25.25(b) as allowing WCAD to take a more extraordinary step—changing ownership *after* the appraisal roll has been finalized—and yet depriving the taxpayer of a right to protest

that step. We presume that the legislature intended a reasonable result rather than an absurd one. *See* TEX. GOV'T CODE ANN. § 311.021; *Hughes*, 246 S.W.3d at 626.

Third, the tax code also prioritizes the finality of tax decisions and establishes various rules and incentives to ensure that finality is secured. "The legislature's intent, as may be determined from the overall tax appraisal scheme, is that the appraisal rolls become fixed" after the district and the taxpayer have been given the minimum adequate time to file their challenge or protest, respectively. *See Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 543 (Tex.App.–Dallas 2000, pet. denied). Prior to finalization of the appraisal records, deadlines for substantive changes are tight and calendar-based. *See* TEX. TAX CODE ANN. §§ 41.04, .44. After the appraisal roll is finalized, penalties are assessed for certain late corrections, *id.* 25.25(d), and the avenues for correction are much more limited. *See id.* § 25.25(c)-(d); *GE Capital Corp. v. Dallas Cent. Appraisal Dist.*, 971 S.W.2d 591, 593 (Tex.App.–Dallas 1998, no pet.) (noting that section 25.25 provides for late correction of appraisal roll errors only "under certain, limited circumstances"); *Key Energy Servs., LLC v. Shelby Cnty. Appraisal Dist.*, 428 S.W.3d 133, 140 (Tex.App.–Tyler 2014, pet. denied); *W. Athletic Clubs, Inc.*, 56 S.W.3d at 272–73. WCAD's interpretation would allow the District to make a substantial change increasing individual tax liability "at any time," which is contrary to the statute's scheme favoring finality in tax matters. *See Tex. Gov't Code Ann.* § 311.023(1), (5)

---

6. The fact that, here, the Appraisal Board granted Sebastian a hearing does not lessen this subsection's signal of legislative intent: subsection (b) does not guarantee a hearing because it may only be used to enter changes that would either neutrally or favorably affect an owner's individual liability—of which the taxpayer would have no need to complain. *See* TEX. TAX CODE ANN. § 25.25(b) (West, Westlaw through 2015 R.S.).

(West, Westlaw through 2015 R.S.); *cf.* TEX. TAX CODE ANN. § 25.21 (West, Westlaw through 2015 R.S.) (providing two-year statute of limitations for increasing individual tax liability by adding property to the appraisal roll).

■ In sum, the legislature has established a property tax scheme which: (1) consistently treats the term "liability" as an individual rather than net-effect concept, (2) grants a right of hearing to those facing tax increases, and (3) favors finality after all hearings have been completed. WCAD's interpretation is contrary to all three traits, whereas Sebastian's is not. We agree with Sebastian that section 25.25(b) does not allow the District to freely shift liability and thereby increase one taxpayer's liability.

WCAD does not direct our attention to any other section of the property tax code which grants the authority for WCAD to do as it did. WCAD also rejects Sebastian's suggestion that section 25.21 would otherwise provide the appropriate statutory authority—but for that section's two-year statute of limitations, which would, at this point, bar any action by WCAD under that section. *See* TEX. TAX CODE ANN. § 25.21 (West, Westlaw through 2015 R.S.); *In re ExxonMobil Corp.*, 153 S.W.3d at 613 (relying on section 25.21 to address a fraudulent rendition of property); *Beck & Masten Pontiac–GMC, Inc. v. Harris Cnty. Appraisal Dist.*, 830 S.W.2d 291, 294–95 (Tex.App.–Houston [14th Dist.] 1992, writ denied) (same).

■ "Agencies are creatures of statute and their powers are limited by their enabling statutes." *Freightliner Corp. v. Motor Vehicle Bd. of Tex. Dept. of Transp.*, 255 S.W.3d 356, 365 (Tex.App.–Austin 2008, pet. denied); *see Pub. Util. Com'n of Tex. v. GTE–Sw., Inc.*, 901 S.W.2d 401, 406 (Tex.1995). "As a general rule, the legislature impliedly intends that

an agency should have whatever power is reasonably necessary to fulfill a function or perform a duty that the legislature has expressly placed in the agency." *GTE–Sw., Inc.*, 901 S.W.2d at 407. "The agency may not, however, on a theory of necessary implication ... exercise what really amounts to a new and additional power or one that contradicts the statute, no matter that the new power is viewed as being expedient for administrative purposes." *Id.* Here, while WCAD's exercise of power may well be convenient for its purposes, WCAD may not contradict the limitations of the tax code in order to achieve this convenience. *See id.*; *see also Denton Cnty. Elec. Co-op., Inc. v. Pub. Util. Com'n of Texas*, 818 S.W.2d 490, 492 (Tex.App.–Texarkana 1991, writ denied). Rather, other means are available to address any actual tax fraud—means that are permitted by the relevant statute. *See* TEX. TAX CODE ANN. § 22.29 (West, Westlaw through 2015 R.S.) (providing 50% tax penalty for fraud); *id.* § 151.7102 (West, Westlaw through 2015 R.S.) (criminalizing tax fraud); *In re ExxonMobil Corp.*, 153 S.W.3d at 613 (relying on section 25.21 to remedy fraud and uphold a higher liability determination).

■ The district court relied upon section 25.25(b) as authority to shift tax liability to Sebastian. Here, the district court's power to enter judgments was limited to entering "orders necessary to preserve rights protected by and impose duties required by the law." *See* TEX. TAX CODE ANN. § 42.24 (West, Westlaw through 2015 R.S.). This language, though broad, can only be read as vesting the trial court with the authority to enter orders required or allowed "by the law." We have already determined that the law of section 25.25(b) does not allow an increase in individual tax liability. We conclude that the district court was likewise without authority to

shift liability under this provision. The district court erred in assessing Sebastian with tax liability for the 69.7% share of the grain. We sustain Sebastian's second issue.

Having found in favor of Sebastian on this issue, we need not consider Sebastian's remaining issue that seeks reversal of the trial court's decision on the apportionment of tax liability. *See* Tex. R. App. P. 47.1.; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993).[7]

## IV. ATTORNEY'S FEES

By its fourth issue, Sebastian contends that attorney's fees must be awarded to the company as a prevailing party in a section 25.25 dispute. Tax code section 42.29 provides as follows:

> (a) A property owner who prevails in an appeal to the court under Section 42.25 or 42.26, in an appeal to the court of a determination of an appraisal review board on a motion filed under Section 25.25, or in an appeal to the court of a determination of an appraisal review board of a protest of the denial in whole or in part of an exemption under Section 11.17, 11.22, 11.23, 11.231, or 11.24 may be awarded reasonable attorney's fees. The amount of the award may not exceed the greater of:
>
> (1) $15,000; or
>
> (2) 20 percent of the total amount by which the property owner's tax liability is reduced as a result of the appeal.
>
> (b) Notwithstanding Subsection (a), the amount of an award of attorney's fees may not exceed the lesser of:
>
> (1) $100,000; or

> (2) the total amount by which the property owner's tax liability is reduced as a result of the appeal.

TEX. TAX CODE ANN. § 42.29 (West, Westlaw through 2015 R.S.). Three Texas appellate districts have held that the award of reasonable attorney's fees is mandatory under section 42.29. *Martinez v. Dallas Cent. Appraisal Dist.,* 339 S.W.3d 184, 193 (Tex.App.–Dallas 2011, no pet); *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.,* 212 S.W.3d 665, 676 (Tex. App.–Austin 2006, no pet.) ("[A]n award of reasonable attorney's fees is mandatory under Section 42.29."); *Zapata Cnty. Appraisal Dist. v. Coastal Oil & Gas Corp.,* 90 S.W.3d 847, 853 (Tex.App.–San Antonio 2002, no pet.). "[A]dopting the reasoning of our sister courts in *Aaron Rents* and *Zapata,* we conclude the language in section 42.29 is mandatory, and affords the trial court no measure of discretion in determining whether to award attorney's fees." *Martinez,* 339 S.W.3d at 192.

The trial court admitted Sebastian's evidence of attorney's fees. However, the trial court did not admit any evidence of the reasonableness of these fees. Nor did the trial court have any reason to consider the impact of section 42.29's limitations on any award of attorney's fees. Therefore, we remand this matter for further consideration of reasonable and necessary attorney's fees consistent with this opinion and the fee limitations of Texas Tax Code section 42.29. *See* TEX. TAX CODE ANN. § 42.29.

## V. CONCLUSION

We reverse the judgment of the district court and render, in part, judgment in favor of Sebastian as to tax liability for the grain in question. We reverse and re-

---

**7.** We need not reach the question of whether fraud may render an agreement reached under tax code section 1.111(e) void or voidable.

*See* TEX.R.APP. P. 47.1.; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993).

mand, in part, for further proceedings regarding reasonable attorney's fees consistent with this opinion.